842 So.2d 52 (2003)
Dusty Ray SPENCER, Appellant,
v.
STATE of Florida, Appellee.
Dusty Ray Spencer, Petitioner,
v.
James V. Crosby, Jr., Secretary, Florida Department of Corrections, Respondent.
Nos. SC00-1051, SC00-2588.
Supreme Court of Florida.
January 9, 2003.
Rehearing Denied March 25, 2003.
*58 Bill Jennings, Capital Collateral Regional CounselMiddle, and Eric C. Pinkard, Assistant CCRCMiddle Region, Tampa, FL, for Appellant/Petitioner.
Charlie Crist, Attorney General, and Scott A. Browne, Assistant Attorney General, Tampa, FL, for Appellee/Respondent.
PER CURIAM.
Dusty Ray Spencer appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Spencer also petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the trial court's denial of postconviction relief and we deny relief under the habeas petition.
Spencer was convicted of first-degree murder, aggravated assault, aggravated battery, and attempted second-degree murder involving two attacks upon his wife Karen Spencer and his stepson Timothy Johnson. Karen was killed during the second attack. The facts surrounding these crimes are discussed in Spencer v. State, 645 So.2d 377, 379-80 (Fla.1994). The *59 jury recommended a death sentence by a seven-to-five vote. The trial judge found three aggravating circumstances (a previous violent felony conviction based on the contemporaneous convictions; the murder was heinous, atrocious, or cruel (HAC); and the murder was cold, calculated, and premeditated (CCP)), no statutory mitigating circumstances, and one nonstatutory mitigating circumstance (Spencer's history and background). The trial judge followed the jury's recommendation and imposed death. Spencer was also sentenced to five years for aggravated assault, fifteen years for attempted second-degree murder, and fifteen years for aggravated battery, with the sentences to run consecutively for a total of thirty-five years.
On direct appeal, Spencer raised seven issues. He argued that: the trial court erred in denying his motion for judgment of acquittal because the evidence was insufficient to establish premeditation; his motion to sever charges relating to the previous "iron incident" was improperly denied; his objections to the standard jury instructions on premeditation and reasonable doubt were improperly denied; the trial court should have granted his motion for mistrial based upon the prosecutor's improper argument regarding matters not in evidence; the State's use of hearsay testimony violated his rights to due process and to confront and cross examine witnesses; his death sentence had been impermissibly imposed because the trial court considered improper aggravating circumstances, excluded existing mitigating circumstances, and did not properly weigh the circumstances; and Florida's death penalty statute is unconstitutional. This Court affirmed Spencer's convictions, but vacated his death sentence because the trial court improperly found the CCP aggravating circumstance and improperly rejected the statutory mitigating circumstances of "committed while the defendant was under the influence of extreme mental or emotional disturbance" and "substantial impairment of the defendant's capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of law." Id. at 384-85. Consequently, we remanded the case for reconsideration of the death sentence by the judge. See id. at 385.
On remand, the trial court heard argument from both parties and once again imposed the death sentence. The trial judge found two aggravating circumstances (prior violent felony and HAC), the two statutory mental mitigating circumstances, and a number of nonstatutory mitigating factors in Spencer's background. The judge gave some weight to the statutory mental mitigators, very little weight to the nonstatutory mitigators, and concluded that the aggravating circumstances outweighed all of the mitigating circumstances. See Spencer v. State, 691 So.2d 1062 (Fla.1996).
On appeal after resentencing, Spencer raised two issues. He argued that: the death sentence was improperly imposed because the sentencing order was insufficient in its factual basis and rationale, the judge considered inappropriate aggravating factors, the mitigating factors outweighed the aggravating, and the death sentence was not proportionately warranted; and the introduction of hearsay testimony during the penalty phase violated his constitutional rights to due process, confrontation, and cross-examination. This Court found no merit to Spencer's claims and affirmed his death sentence. See id. The United States Supreme Court denied Spencer's petition for certiorari. See Spencer v. Florida, 522 U.S. 884, 118 S.Ct. 213, 139 L.Ed.2d 148 (1997).
In September 1999, Spencer filed an amended motion to vacate his convictions *60 and sentences. The lower court conducted a Huff[1] hearing in December 1999 and subsequently conducted a limited evidentiary hearing in March 2000.
Following the evidentiary hearing, the court entered a comprehensive fifty-nine page order denying all relief. Spencer appeals that denial to this Court and raises ten issues. Spencer claims that: (1) he was denied a fair trial by various instances of prosecutorial misconduct; (2) trial counsel rendered ineffective assistance during the guilt phase of the trial; (3) trial counsel rendered ineffective assistance during the penalty phase of the trial; (4) the State committed a Brady[2] violation by failing to disclose that a reserve deputy sheriff assisted in the investigation of Spencer's first attack on the victim; (5) pretrial publicity and improper contact between protesters and the jurors resulted in juror bias; (6) trial counsel rendered ineffective assistance during voir dire questioning of the prospective jurors; (7) the postconviction court should have granted an evidentiary hearing on several other claims of ineffective assistance of trial counsel during the penalty phase; (8) the State committed several Giglio[3] violations by either presenting false evidence or by misrepresenting the evidence during argument to the jury; (9) Rule Regulating the Florida Bar 4-3.5(d)(4), which prohibits trial counsel from interviewing jurors, denied him adequate assistance of counsel in pursuing postconviction relief; and (10) cumulative errors resulted in an unfair proceeding.
Spencer has also filed a habeas corpus petition with this Court, raising two issues. Spencer claims that Florida's death penalty statute is unconstitutional on its face and as applied and that his conviction and sentence violate the constitutional guarantees to due process, effective assistance of counsel, equal protection, and right to jury trial. Spencer also asserts that appellate counsel was ineffective in failing to raise claims of fundamental error on direct appeal.

Denial of Rule 3.850 Motion
In issue one, Spencer claims that the prosecutor engaged in various misconduct during both the guilt and penalty phases of the trial, including improper Golden Rule arguments, improper appeals to the jury's emotions, eliciting prohibited testimony, making false statements, and improperly commenting on Spencer's right not to testify. The lower court found that all of Spencer's claims of prosecutorial misconduct were procedurally barred from consideration in the postconviction proceedings as they should have been raised on direct appeal. However, "in an abundance of caution" the lower court granted a hearing as to these claims and addressed each on the merits.
We conclude that Spencer's substantive claims of prosecutorial misconduct could and should have been raised on direct appeal and thus are procedurally barred from consideration in a postconviction motion. See Smith v. State, 445 So.2d 323, 325 (Fla.1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). Each of the alleged violations appears on the trial record and could have been raised on direct appeal. Thus, the postconviction court properly concluded that the claims were *61 procedurally barred and we affirm the denial of relief on this claim.
In issue two, Spencer asserts that his trial counsel rendered ineffective assistance during the guilt phase of the trial and cites the following specific examples as evidence of this failure: counsel did not present evidence to rebut the State's claim of premeditation; counsel did not present expert testimony regarding Spencer's "dissociative state" during the murder; counsel did not impeach the testimony of the physician who treated the victim after the first attack; counsel did not test the brick used to strike the victim for evidence of Spencer's blood; counsel failed to impeach the testimony of the victim's son regarding Spencer's use of latex gloves; counsel failed to object to the prosecutor's "emotional display" during closing argument; counsel conceded that Spencer struck the victim with an iron in the first attack and admitted that Spencer intended to kill the victim; and counsel failed to elicit evidence that Spencer regularly carried a knife.
In order to prevail on a claim of ineffective assistance of trial counsel, a defendant must demonstrate that (1) counsel's performance was deficient and (2) there is a reasonable probability that the outcome of the proceeding would have been different. See Strickland v. Washington, 466 U.S. 668, 687, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A reasonable probability is a probability sufficient to undermine confidence in the outcome. See id. at 694, 104 S.Ct. 2052. In reviewing counsel's performance, the court must be highly deferential to counsel, and in assessing the performance, every effort must "be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Id. at 689, 104 S.Ct. 2052; see also Rivera v. Dugger, 629 So.2d 105, 107 (Fla.1993). As to the first prong, the defendant must establish that "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. 2052; see also Cherry v. State, 659 So.2d 1069, 1072 (Fla. 1995). For the prejudice prong, the reviewing court must determine whether there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different. See Strickland, 466 U.S. at 695, 104 S.Ct. 2052; see also Valle v. State, 705 So.2d 1331, 1333 (Fla.1997). "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." Strickland, 466 U.S. at 687, 104 S.Ct. 2052. This is the standard that the postconviction court used in assessing Spencer's claims of ineffective assistance of counsel and in denying relief on the claims. The postconviction court concluded that Spencer "received competent, effective assistance of counsel in the presentation of his defense" and, to the extent that counsel's performance was "less than perfect," Spencer was not prejudiced by it. For the reasons expressed below, we agree with the postconviction court's denial of relief on each of these subclaims.
Spencer contends that trial counsel was ineffective for failing to present witnesses who could testify as to the stormy and antagonistic relationship that he had with his wife. Spencer argues that this evidence would have rebutted the conclusion that the murder was premeditated. At the evidentiary hearing, Spencer presented the testimony of several friends who had witnessed the couple's relationship. Trial counsel testified that the defense investigator spoke to these individuals *62 during the pre-trial investigation, but that counsel chose not to focus on the relationship for fear of being perceived as blaming the victim for Spencer's actions. Counsel was also concerned with opening the door to damaging and prejudicial evidence relating to Spencer's first marriage and his background. Ultimately, counsel testified, he decided not to present witnesses during the guilt phase as they would not substantially help Spencer's defense of lack of premeditation. Instead, counsel testified, he chose to cast doubt on the State's case through cross-examination of the State witnesses. Thus, this was not a case of failure to adequately investigate and prepare for trial. Counsel made a strategic decision not to call these witnesses. Further, the stormy nature of the Spencers' relationship was presented at trial through the direct and cross-examination of the State witnesses.
This Court has held that defense counsel's strategic choices do not constitute deficient conduct if alternative courses of action have been considered and rejected. See Valle, 778 So.2d at 965; Shere v. State, 742 So.2d 215, 220 (Fla.1999). Thus, we affirm the lower court's denial of relief on this claim.
Spencer claims that counsel was ineffective for failing to present expert testimony in the guilt phase regarding his "dissociative state" that occurred during the murder. Spencer asserts that this evidence of his amnesia or altered consciousness would have shown that the murder was not premeditated. At the evidentiary hearing, clinical psychologist Dr. Kathleen Burch and neuropharmacologist Dr. Jonathan Lipman stated that they could have testified during the guilt phase about Spencer's dissociative state during the murder, but were not asked to do so by trial counsel. Both experts opined that it was likely that Spencer suffered such a dissociative state during the murder based upon his self-report of not remembering the stabbing and of experiencing a blackout during the attack, his long history of alcohol abuse, and his personality disorder. However, Dr. Burch did admit that at the time of trial she was skeptical of Spencer's claimed amnesia and still could not state with certainty that he was definitely in a dissociative state. Dr. Lipman stated that he could also have testified that Spencer's mind was impaired at the time of the offense based upon the residual effects of a two-week alcoholic binge even though Spencer's blood alcohol level was zero at the time of the murder.
Trial counsel testified at the evidentiary hearing that the defense team had discussed whether to call the experts as guilt phase witnesses, but ultimately decided against this for two reasons. First, counsel feared that the experts' testimony might reveal other statements by Spencer that would be more harmful than helpful to his defense. Second, counsel felt that the experts' effectiveness as penalty phase witnesses might be compromised if they testified in the guilt phase and Spencer was found guilty.
The lower court concluded that trial counsel made a strategic decision not to present this testimony during the guilt phase of the trial and that the evidence had no reasonable probability of being an effective defense to premeditation as the dissociative state was only supported by Spencer's self-report and could not be confirmed otherwise. Further, the lower court noted that Spencer remembered all of the events of the murder up to the point where he repeatedly struck the victim with a brick and reported these events to Dr. Lipman. The lower court also noted that Dr. Lipman's testimony regarding Spencer's alcohol binge would not have demonstrated a defense of voluntary intoxication *63 because Spencer was not intoxicated at time of the offense. Thus, the lower court denied relief on this claim.
While not specifically addressed by the lower court, we conclude that the evidence of Spencer's "dissociative state" would not have been admissible during the guilt phase of the trial. "[E]vidence of most mental conditions is simply too misleading to be allowed in the guilt phase." Dillbeck v. State, 643 So.2d 1027, 1029 (Fla.1994). While evidence of voluntary intoxication and of other commonly understood conditions that are beyond one's control, such as epilepsy, are admissible in cases involving specific intent, see id.; see also Bunney v. State, 603 So.2d 1270 (Fla. 1992); Gurganus v. State, 451 So.2d 817, 822-23 (Fla.1984) ("When specific intent is an element of the crime charged, evidence of voluntary intoxication ... is relevant."), there are limitations regarding the admissibility of evidence of mental disease or defect within the defense of voluntary intoxication. See State v. Bias, 653 So.2d 380, 382-83 (Fla.1995). As this Court explained in Bias, such limitations are required "to ensure that the defense of voluntary intoxication is not utilized as a label for what in reality is a defense based upon the doctrine of diminished capacity." Id. Further, "[w]e continue to adhere to the rule that expert evidence of diminished capacity is inadmissible on the issue of mens rea." Id. Thus, we agree with the lower court that counsel's failure to present this evidence did not constitute deficient performance and we affirm the lower court's denial of this claim.
Spencer also claims that counsel was ineffective in failing to impeach the testimony of the physician who treated the victim after the first attack. The treating physician testified at trial that the victim reported that "she was beaten with an iron" and that her facial injuries were consistent with being hit with an iron. Spencer contends that counsel should have introduced testimony from the triage physician who also saw the victim at the hospital. At the evidentiary hearing, Spencer proffered the triage physician's report, which does not mention an iron. However, Spencer did not offer testimony or an affidavit from the triage physician to directly contradict the testimony of the treating physician on the nature of the weapon used. Reversible error cannot be predicated on such conjecture. See Sullivan v. State, 303 So.2d 632, 635 (Fla.1974). Thus, this claim of ineffective assistance does not meet either prong of the Strickland standard and no relief is warranted on this basis.
Spencer further asserts that trial counsel was ineffective in failing to test the brick, which was introduced into evidence as a weapon in the fatal attack, for indications of his blood. The test results introduced at the evidentiary hearing were inconclusive. No relief is warranted on Spencer's speculative assertion that had the brick been tested for Spencer's blood at the time of trial it might have revealed his blood and that this would have supported his claim of a domestic dispute that got out of hand and he would not have been convicted of first-degree murder. See Sullivan.
Spencer also claims that trial counsel was ineffective in failing to impeach the testimony of Timothy Johnson, the victim's son, regarding Spencer's use of latex gloves. On direct examination at trial, Johnson testified that Spencer was wearing clear plastic "surgical gloves" on the day of his mother's murder. Johnson also testified that these were the type of gloves used by Spencer and his mother in their painting business. During cross-examination by trial counsel, Johnson stated *64 that he had never seen Spencer wear these gloves during the three years he had known Spencer and that only his mother wore the gloves while painting. In his pre-trial deposition Johnson stated that he had seen Spencer wear similar gloves while painting. Spencer claims that the gloves were crucial to the State's theory of premeditation and thus counsel was ineffective for failing to impeach Johnson on this point. At the evidentiary hearing, trial counsel conceded that he missed this point on cross-examination. The lower court concluded that counsel's failure to impeach Johnson about the gloves did not constitute ineffective assistance as there was no reasonable probability that the outcome of the trial would have been different had counsel done so.
Whether or not Spencer had previously worn gloves when he was painting had no bearing on the issue of premeditation. There was never any allegation that Spencer had gone to his wife's house to paint on the day of the murder. In fact, Spencer stated that he went to the house to steal his car title and did not want to leave his fingerprints. Thus, Spencer did wear gloves to conceal his identity on the day of the murder. Counsel's failure to impeach on this point does not meet the Strickland standard and we affirm the lower court's denial of relief on this claim.
Spencer also cites trial counsel's failure to object to the prosecutor's "emotional display" during closing argument as evidence of ineffective assistance. At the evidentiary hearing, the prosecutor testified that she did not cry during closing argument as Spencer contends. Based upon the prosecutor's testimony and a videotape of the prosecutor's closing argument, the lower court found that the prosecutor's voice "quavered" for a few seconds, but that she did not cry during closing argument. The court also noted that the prosecutor turned away from the jury when this occurred and composed herself before proceeding with her closing argument. Trial counsel testified at the evidentiary hearing that the prosecutor had her back to the defense team during closing argument and they could not tell whether she was crying, that her emotional tone lasted for only a few seconds, and that she had regained her composure by the time they even realized that something might be happening to which they should object. Thus, we conclude that even if counsel was deficient in failing to object to this incident there is no reasonable probability that an objection would have resulted in a different outcome.
We conclude that the other incidents of alleged ineffective assistance for failing to object to prosecutorial misconduct during the guilt phase do not meet the Strickland standard either because the substantive claim was raised and rejected on direct appeal (the prosecutor's comments relating to the victim carrying a rifle) or the prejudice prong was not proven (the prosecutor's opening comments that Johnson witnessed Spencer hitting the victim with an iron were corrected later in the trial and there was independent evidence that victim was hit with an iron).
Spencer also claims that trial counsel improperly conceded that Spencer hit the victim with an iron during the first attack and improperly admitted during closing argument that Spencer killed his wife. At the evidentiary hearing, trial counsel explained that he could not argue to the jury that the acts in question had not occurred or that Spencer had not committed the acts as the victim's son was an eyewitness to the acts. Nor could he deny that the victim died as a result of these actions. Counsel explained that he instead argued that the acts did not result from a premeditated design. Counsel explained *65 that he was drawing a distinction between Spencer's intent to do the acts at the moment and a premeditated design to kill the victim. In fact, trial counsel repeatedly asked, "Where's the intent [to commit murder]?" during his argument to the jury. The lower court concluded that trial counsel's argument did not constitute deficient performance and there was no reasonable probability that the outcome of the trial would have been different had counsel not made this argument. We agree with this conclusion.
Spencer also asserts that trial counsel was ineffective for failing to present witnesses who could have testified that he commonly carried a hunting knife on his person. Spencer contends that such evidence would have refuted the inference that he carried a knife on the day of the murder for the purpose of killing his wife. At the evidentiary hearing, Spencer presented testimony from two witnesses who verified that Spencer did carry a hunting knife at times. However, at trial Johnson testified that the knife Spencer used to stab the victim was a serrated "steak knife" and that it was not taken from his mother's kitchen as those knives were all accounted for after the murder. At the evidentiary hearing, trial counsel stated that it would not have helped his client if he had introduced evidence of the hunting knife when the weapon in question was identified by an eyewitness as a serrated steak knife. Counsel also stated that his strategy regarding the knife was to put the burden on the State to show where the knife came from and that the knife Johnson saw was actually used to stab the victim.
Regardless of the efficacy of counsel's strategy, we agree with the lower court that the hunting knife testimony would have been of little assistance in proving lack of premeditation where the knife in question was clearly identified as a serrated steak knife. Thus, there is no reasonable probability that the result of the proceeding would have been different had this evidence been presented at trial and thus no relief is warranted. See Strickland.
Finally, Spencer claims that trial counsel was ineffective in his voir dire questioning of three jurors regarding bias and in failing to question jurors who had contact with the prosecutors and the victim's advocate during trial. As noted in the lower court's order, trial counsel filed a Motion for Juror Questionnaire and to Supplement Voir Dire. Based upon this motion, each potential juror filled out a fairly extensive questionnaire consisting of forty-one questions. The questionnaire was designed to seek out biases, including whether the juror or someone close to the juror had been the victim of a violent crime or domestic violence and to elicit what newspapers, periodicals, and media the juror regularly read or viewed.
The test for determining juror competency is whether the juror can lay aside any bias or prejudice and render a verdict solely on the evidence presented and the instructions on the law given by the court. See Lusk v. State, 446 So.2d 1038, 1041 (Fla.1984). Our review of the record indicates that each of the jurors in question met this standard. Further, the record shows that either counsel or the court adequately questioned the jurors regarding any possible bias. Thus, we agree with the lower court that there is no merit to this claim and relief was not warranted on this basis.
The second part of this claim questions the adequacy of counsel's inquiry about improper contact between the jurors and the prosecutors and the victims' advocate. The improper contact involved innocuous *66 comments by several jurors[4] which were immediately brought to the court's attention. After inquiry by the judge, the jurors were reminded not to say anything to the lawyers or any of the witnesses until the trial was over.
The lower court concluded that trial counsel's performance was not deficient for failing to voir dire the jurors about these incidents and that there was no reasonable probability that the outcome of the trial would have been different had counsel done so. As noted above and in the lower court's order, the record supports this conclusion and we affirm the denial of relief on this claim.
In issue three, Spencer claims that trial counsel was ineffective during the penalty phase proceedings by failing to properly present evidence of his dissociative state during the stabbing and by failing to object to the prosecutor's mischaracterization of Dr. Lipman's testimony during closing argument. Spencer claims that the dissociative state evidence would have negated the HAC aggravator as the actions that supported HAC occurred during his dissociative state.
As noted in issue two above, Drs. Lipman and Burch testified at the evidentiary hearing about the testimony and opinions that they could have offered as to a dissociative state. Dr. Lipman's assessment of a dissociative state was based on Spencer's self-reported lack of memory and was not otherwise subject to confirmation. Dr. Burch testified that she could not state with certainty that Spencer was in a dissociative state at the time of the murder. Furthermore, Dr. Burch's final report to the defense team prior to trial questioned Spencer's claim of amnesia.
The record of the penalty phase shows that both Drs. Lipman and Burch did testify as to Spencer's "dissociative state" or lack of memory of the stabbing. Both experts also testified about Spencer's alcohol and drug use, his inability to conform his conduct to the requirements of the law, and his mental impairments which resulted in a loss of control in stressful situations. Dr. Lipman also opined that Spencer was impaired at the time of the offense based upon the residual effects of a two-week alcoholic binge.
Based upon this evidence from the penalty phase and that presented at the evidentiary hearing, the lower court concluded that Spencer's trial counsel utilized the experts effectively. As the lower court noted, Spencer's trial counsel employed both a clinical psychologist who conducted testing on Spencer and a neuropharmacologist to explain the effects of his alcohol and drug use on his mental state. These experts even testified as to Spencer's "dissociative state" during the murder. Thus, we agree with the lower court that Spencer is not entitled to relief on this claim.
Spencer also contends that trial counsel was ineffective in failing to object to the prosecutor's characterization of Dr. *67 Lipman's testimony during closing argument. Spencer claims that the prosecutor misstated Dr. Lipman's testimony and gave the jurors the impression that Spencer remembered stabbing the victim by arguing that "Dusty Spencer gave statements to Dr. Lipman that he had stabbed Karen [Spencer] before Tim [Johnson] left." The lower court found the claim to be without merit and that counsel was not deficient for failing to object to this statement.
Our review of the trial record shows that the prosecutor made this statement in the context of arguing that the victim received all of her injuries while she was alive and that Johnson was confused about whether his mother had been stabbed before he left the scene. While Dr. Lipman testified on direct examination that Spencer did not actually remember using the knife, he also testified that, in Spencer's "own words," when Spencer "came out of a blackout" he had a knife in his hand, Johnson was pulling his mother away and stating that Spencer had killed her, the victim had blood coming out of her mouth, and Johnson then ran off down the road. When Dr. Lipman was asked on cross-examination whether Spencer told him "that he remembered that [the victim] was stabbed before Tim left," Dr. Lipman replied "right."
As the lower court noted, a fair reading of the transcript and Spencer's statement to Dr. Lipman indicates that Spencer stabbed the victim before the son left, which was the point of the prosecutor's argument. We conclude that the prosecutor did not intend this statement as an indication that Spencer actually remembered the stabbing. Thus, Spencer is not entitled to relief on this claim of ineffective assistance of counsel.
In issue four, Spencer asserts that the State committed a Brady violation by failing to disclose that a reserve deputy sheriff assisted in the investigation of Spencer's first attack on the victim. At the evidentiary hearing, reserve Orange County Sheriff's Deputy Bill Anthony testified that he was present and assisted Deputy Ronald Weyland, who testified at trial, in responding and investigating the "iron incident." Anthony testified that Karen Spencer made a statement to the deputies after being treated by the doctors at the hospital. According to Anthony, Karen stated that Spencer had hit her with something, but she did not know what the object was. Anthony also testified that no one from Spencer's defense team spoke to him before trial. On cross examination, Anthony testified that Deputy Weyland actually wrote the police report, that Weyland was present during the time that Anthony was with Karen, and that Anthony's name appeared in the report as one of the responding officers. Anthony further testified that he could not have offered any testimony different from that given by Deputy Weyland at trial.
A defendant must demonstrate the following elements before a violation of Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), has been proven: (1) the evidence at issue is favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence has been suppressed by the State, either wilfully or inadvertently; and (3) the defendant has been prejudiced by the suppression of this evidence. See Strickler v. Greene, 527 U.S. 263, 281-82, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999); Way v. State, 760 So.2d 903, 910 (Fla. 2000), cert. denied, 531 U.S. 1155, 121 S.Ct. 1104, 148 L.Ed.2d 975 (2001); Thompson v. State, 759 So.2d 650, 662 (Fla.2000). A defendant is prejudiced by the suppression of exculpatory evidence if it is material, in other words if "there is a `reasonable probability' that the result of the trial would *68 have been different if the suppressed documents had been disclosed to the defense." Strickler, 527 U.S. at 289, 119 S.Ct. 1936.
The lower court concluded that no Brady violation occurred in Spencer's case because (1) Anthony was identified in Weyland's police report, which was given to trial counsel in discovery; (2) Weyland mentioned Anthony's name in his pretrial deposition; and (3) Anthony was listed as a State witness for the penalty phase. Based upon the record evidence, we conclude that Anthony's identity was not suppressed by the State, and that Anthony did not possess any evidence that was favorable to Spencer. Thus, we agree with the lower court that there was no Brady violation and we affirm the denial of relief on this claim.
In issue five, Spencer asserts that he was unable to receive a fair trial because of pretrial publicity and local protests against domestic violence. He further claims that trial counsel failed to adequately argue for a change of venue and that the trial court conducted inadequate voir dire regarding pretrial publicity and bias.
In his postconviction motion to the lower court, Spencer cited a number of newspaper articles reporting the victim's death and the ensuing judicial proceedings and several newspaper editorials which criticized the legal system for its handling of domestic violence cases. Spencer also noted that the National Organization for Women organized a candlelight vigil for Karen Spencer at the Orange County Courthouse the day after her murder. Spencer also made general allegations that the protestors exerted political pressure for his conviction and created a public bias against him, that reporters and protestors spoke to jurors, and that jurors, reporters, and protestors mingled in the halls of the courtroom. Spencer did not offer details or specifics to support these claims.
The lower court concluded that Spencer's claims of pretrial publicity and juror bias were procedurally barred because not raised on direct appeal. However, even though the lower court found these claims barred, the court did address the merits of the claims. As the lower court noted, of the twenty potential jurors who had any prior knowledge of the case, only three were actually seated on the jury. These three jurors stated that they had no fixed opinion as to Spencer's guilt or innocence and would consider the case based only on the evidence presented in court.
We agree with the lower court that any claims relating to pretrial publicity or juror bias are procedurally barred because not raised on direct appeal. See Smith v. State, 445 So.2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack."). Further, even if the issues were not procedurally barred, relief still would not be warranted. The mere fact that jurors were exposed to pretrial publicity is not enough to raise the presumption of unfairness. See Castro v. State, 644 So.2d 987, 990 (Fla.1994). It is sufficient if the juror can lay aside his or her opinion or impression and render a verdict based on the evidence presented in court. See id.; Bundy v. State, 471 So.2d 9, 19 (Fla. 1985). The jurors in question here met that standard.
As to Spencer's claims that the trial court conducted inadequate voir dire and that the jurors had improper contact with protestors and reporters during the trial, we agree with the lower court that these claims are procedurally barred because not raised on direct appeal. See Smith. Further, as the lower court noted, Spencer does not allege specific details to support these claims.
*69 Finally, Spencer claims that trial counsel was ineffective in not presenting a better motion for a change of venue. We find no merit to this claim. As the lower court noted, Spencer's trial counsel did file a motion for a change of venue based upon pretrial publicity. Attached to the motion was a memorandum of law and copies of newspaper articles related to the case. Trial counsel brought the motion before the court at a pretrial hearing, but the court reserved ruling on the motion until it attempted to seat a jury. See Henyard v. State, 689 So.2d 239, 245 (Fla.1996) (stating that trial courts are ordinarily permitted to attempt to empanel a jury before ruling on a motion for change of venue). The court stated that if a fair and impartial jury could not be seated, then it would hear the motion for a change of venue. Spencer's real claim appears to be that counsel did not prevail on the motion for a change of venue. Counsel cannot be deemed ineffective for failing to prevail on an issue raised and properly rejected by the trial court. See Teffeteller v. Dugger, 734 So.2d 1009, 1020 (Fla.1999).
For the reasons discussed above, we affirm the lower court's denial of relief on all of Spencer's claims relating to pretrial publicity and juror bias.
In issue six, Spencer argues that trial counsel rendered ineffective assistance in failing to adequately voir dire the jurors about bias against him. He asserts that counsel should have challenged or excused three jurors and did not voir dire other jurors who had contact with state actors during the trial. Based upon the record of voir dire, the lower court concluded that trial counsel was not ineffective in his questioning of the three jurors regarding possible bias. The lower court also concluded that even though trial counsel did not question jurors about their contact with state actors, counsel was not deficient in this regard as the trial court fully explored the reported contact, determined that the contact involved innocuous passing comments, and admonished the jurors not to say anything to the lawyers or witnesses involved in the case. As discussed more fully in issue two above, our review of the record supports the lower court's conclusion that trial counsel did not render ineffective assistance in this regard and no relief is warranted on this basis.
In issue seven, Spencer alleges that the lower court should have conducted an evidentiary hearing on his other claims of ineffective assistance of trial counsel during the penalty phase proceeding. Specifically, Spencer claims that counsel was ineffective in failing to object to the prosecutor's cross-examination questions to several lay witnesses about Spencer's mental state and for failing to seek a new penalty phase before a new jury on remand by this Court for resentencing.
Florida Rule of Criminal Procedure 3.850(d) provides that a claim can be denied without a hearing where "the motion, files, and records in the case conclusively show that the movant is entitled to no relief." See also Anderson v. State, 627 So.2d 1170, 1171 (Fla.1993); Provenzano v. Dugger, 561 So.2d 541, 543 (Fla.1990). To support summary denial without a hearing, a trial court must either state its rationale in its decision or attach those specific parts of the record that refute each claim presented in the motion. See Anderson, 627 So.2d at 1170.
During the penalty phase proceedings of Spencer's trial three lay witnesses, including Spencer's father, a childhood friend, and a childhood and military friend, testified on Spencer's behalf. On cross-examination, the prosecutor asked each of the witnesses if they had observed anything that led them to believe that Spencer was mentally or emotionally ill. *70 Trial counsel entered no objection to this questioning. However, even if counsel had objected it would have had no effect on the testimony elicited as this line of questioning was entirely proper. "It is a well established principle of law in this state that an otherwise qualified witness who is not a medical expert can testify about a person's mental condition, provided the testimony is based on personal knowledge or observation." Rivers v. State, 458 So.2d 762, 765 (Fla.1984); see also Strausser v. State, 682 So.2d 539, 541 (Fla.1996) (finding no error in permitting lay witness who knew the defendant to express an opinion as to the defendant's mental condition when it was based entirely on his personal observations). Thus, the lower court's summary denial of this claim was proper.
We also conclude that summary denial was also proper as to Spencer's claim regarding trial counsel's failure to request that a new jury be impaneled upon remand for resentencing. In Spencer's direct appeal, this Court "vacate[d] his death sentence and remand[ed] this case for reconsideration of the death sentence by the judge." Spencer v. State, 645 So.2d 377, 385 (Fla.1994) (emphasis added). After resentencing, the Court explained the procedural history of the case by stating "we remanded the case for reconsideration of the death sentence by the judge." Spencer v. State, 691 So.2d 1062, 1063 (Fla.1996) (emphasis added). In those instances where we have remanded a case for a new penalty phase proceeding before a new jury, we have stated so in clear language. See, e.g., Brooks v. State, 762 So.2d 879, 905 (Fla.2000); Johnson v. State, 750 So.2d 22, 28 (Fla.1999); Donaldson v. State, 722 So.2d 177, 189 (Fla.1998). Thus, trial counsel cannot be faulted for failing to seek proceedings beyond the scope of this Court's remand and the lower court's summary denial was proper.
In issue eight, Spencer argues that the State knowingly presented or failed to correct material false statements in violation of Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972). To establish a Giglio violation, a defendant must show: (1) that the testimony was false; (2) that the prosecutor knew the testimony was false; and (3) that the statement was material. See id.; Routly v. State, 590 So.2d 397 (Fla.1991). As the United States Supreme Court explained in Giglio, the State may commit such a violation either by deliberately presenting false evidence or by allowing false evidence to go uncorrected when it appears. See Giglio, 405 U.S. at 153, 92 S.Ct. 763. In either instance, if there is a reasonable probability that the false evidence could have affected the jury's judgment, then the defendant is entitled to a new trial. See id. at 154, 92 S.Ct. 763; Routly, 590 So.2d at 400.
Here, Spencer alleges that the prosecutor committed a Giglio violation in two instances. During opening argument of the guilt phase, the prosecutor stated that the victim's son would testify that he saw Spencer strike his mother with an iron. During closing argument of the penalty phase, the prosecutor stated that Dr. Lipman testified that Spencer told him that he remembered stabbing the victim. Thus, Spencer does not allege that the prosecutor actually elicited false testimony, but intentionally misstated the nature of the evidence in the case. The lower court concluded that both claims were procedurally barred because they could have been raised on direct appeal. However, the lower court also addressed the merits of the claims and found no Giglio violation. We agree with the lower court that Spencer is not entitled to relief for the reasons discussed below.
*71 In the guilt phase opening argument, the prosecutor stated that the victim's son, Timothy Johnson, would testify that he saw Spencer hit his mother with an iron during the first incident. At trial, Johnson did not testify that he saw Spencer hit his mother with an iron. Johnson testified that he saw Spencer beating his mother with his fist, that Spencer picked up an iron and hit Johnson in the face with the iron in Johnson's room, and that Spencer then returned to his mother's room. Dr. Bowman, the emergency room treating physician, testified that the victim stated she had been hit with an iron and that her injuries were consistent with this statement. During closing argument, trial counsel reminded the jury that Johnson had stated that he did not see Spencer hit the victim with an iron. In her closing argument, the prosecutor stated that while Johnson saw Spencer pick up the iron he did not remember seeing his mother being beaten with the iron. At the postconviction evidentiary hearing, the prosecutor testified that she believed that Johnson would testify as she stated in her opening argument and that she did not intentionally misrepresent the evidence. Additionally, there was evidence presented at trial that supported the conclusion that Spencer did hit the victim with an iron. Finally, the correct version of Johnson's testimony was brought to the jury's attention during closing argument by both Spencer's trial counsel and the prosecutor.
Regarding the second alleged Giglio violation, Spencer argues that the prosecutor misstated Dr. Lipman's testimony and gave the jurors the impression that Spencer remembered stabbing the victim. During her penalty phase closing argument, the prosecutor stated that "Dusty Spencer gave statements to Dr. Lipman that he had stabbed Karen before Tim[othy Johnson] left." Although Dr. Lipman testified that Spencer did not actually remember using the knife, Dr. Lipman testified that, in Spencer's "own words," when he "came out of a blackout" he had a knife in his hand, Johnson was pulling his mother away and stating that Spencer had killed her, the victim had blood coming out of her mouth, and Johnson then ran off down the road. The prosecutor's statement, which was made in the context of supporting her argument that the victim received all of her injuries while she was alive and that Johnson was confused about whether his mother had been stabbed before he left the scene, did not misrepresent Dr. Lipman's testimony on this matter. A fair reading of the transcript and Spencer's statement to Dr. Lipman indicates that Spencer did stab the victim before the son left, which is the point of the prosecutor's argument. Thus, we conclude that no Giglio violations occurred and affirm the lower court's denial of relief on this claim.
In issue nine, Spencer contends that Rule Regulating the Florida Bar 4-3.5(d)(4),[5] which prohibits counsel *72 from contacting the jury about the trial, is unconstitutional as it impeded his ability to fully explore possible jury misconduct and bias. He further argues that the rule effectively deprived him of adequate assistance of postconviction counsel by limiting such inquiry. The lower court properly concluded that the claim relating to the rule was procedurally barred because not raised on direct appeal. See Young v. State, 739 So.2d 553, 555 n. 5 (Fla.1999) (concluding that postconviction claim regarding the constitutionality of rule which limits an attorney's right to interview jurors after the conclusion of trial was procedurally barred because not raised on direct appeal). Further, the lower court also properly concluded that Spencer's claim of ineffective assistance of postconviction counsel was not properly cognizable in a rule 3.850 motion. See Lambrix v. State, 698 So.2d 247, 248 (Fla.1996) (holding that claims of ineffective assistance of postconviction counsel do not present a valid basis for relief). Accordingly, we conclude that no relief is warranted on these claims.
As his last issue on appeal, Spencer claims that he was deprived of a fair trial by the cumulative errors that occurred during his trial proceedings. As discussed above, Spencer's claims of error are either procedurally barred or without merit. Thus, we agree with the lower court's denial of relief on this claim.
For the reasons discussed above, we conclude that Spencer is not entitled to relief on his postconviction motion. Accordingly, we affirm the lower court's denial of relief.

Habeas Petition
Spencer has also filed a petition for writ of habeas corpus with this Court. He raises two claims in his petition: (1) Florida's death penalty statute is unconstitutional; and (2) appellate counsel was ineffective in failing to raise claims of prosecutorial misconduct as fundamental error on direct appeal to this Court.
Spencer asserts that Florida's death penalty scheme is unconstitutional under the United States Supreme Court's ruling in Apprendi v. New Jersey, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In Apprendi, the Supreme Court held that any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proven beyond a reasonable doubt. Subsequently, in Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002), the Supreme Court ruled that Apprendi is applicable in the death penalty context. Accordingly, the Supreme Court found the Arizona capital sentencing statute at issue in Ring to be unconstitutional "to the extent that it allows a sentencing judge, sitting without a jury, to find an aggravating circumstance necessary for the imposition of the death penalty." Id., 122 S.Ct. at 2443. Spencer argues that Florida's capital sentencing statute suffers the same constitutional infirmity. However, Spencer's claim has already been addressed by this Court and decided adversely to him. See Bottoson v. Moore, 833 So.2d 693 (Fla. 2002) (concluding that Bottoson was not entitled to relief under Ring).
Spencer also asserts that, in light of this Court's determination that the evidence in his case did not support the CCP aggravating circumstance but did support the statutory mental mitigators, see Spencer v. State, 645 So.2d 377, 384-85 (Fla. 1994), Apprendi required that a new jury be impaneled on remand of his case for resentencing. He also asserts that this Court's order on remand was ambiguous as to whether a new jury should be impaneled *73 to consider the mitigating and aggravating circumstances. However, we find no ambiguity in our specific remand for "reconsideration of the death sentence by the judge." Id. at 385 (emphasis added). Further, after resentencing was complete we also noted that the case had been remanded "for a reweighing of the aggravating and mitigating circumstances by the judge." Spencer v. State, 691 So.2d 1062, 1064 (Fla.1996) (emphasis added). Additionally, because Apprendi does not apply to Florida's capital sentencing scheme, there is no merit to Spencer's claim that a new jury should have been impaneled to determine the aggravating and mitigating circumstances. Thus, we conclude that Spencer is not entitled to relief on this claim.
Spencer also contends that appellate counsel was ineffective for failing to raise as fundamental error several instances of prosecutorial misconduct,[6] two alleged Giglio violations by the prosecutor,[7] and the State's introduction of redacted photographs relating to the first attack on the victim.[8] In ascertaining the merit of a habeas petition based on a challenge of ineffective assistance of appellate counsel, it is appropriate to determine:
[F]irst, whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance and, second, whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
Teffeteller v. Dugger, 734 So.2d 1009, 1027 (Fla.1999); see also Wilson v. Wainwright, 474 So.2d 1162, 1163 (Fla.1985). Under this analysis, appellate counsel will not be deemed ineffective for failing to raise issues not preserved for appeal. See Medina v. Dugger, 586 So.2d 317, 318 (Fla. 1991). However, an exception may be made where appellate counsel fails to raise a claim which, although not preserved at trial, presents a fundamental error. See Roberts v. State, 568 So.2d 1255, 1261 (Fla. 1990). A fundamental error is defined as an error that "reaches down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Kilgore v. State, 688 So.2d 895, 898 (Fla.1996).
The allegations of prosecutorial misconduct relating to evidence of the victim carrying a rifle were raised and rejected by this Court on direct appeal. See Spencer, 645 So.2d at 382-83. Spencer claimed that the trial court erred in denying his motion for mistrial after the prosecutor stated in closing argument that the victim answered the door with a rifle in her hand. The trial court had previously sustained Spencer's objection to this testimony as irrelevant when the prosecutor attempted to introduce it through testimony of the victim's friend. *74 When the prosecutor made this comment in closing, defense counsel objected and the court sustained the objection. However, the trial court denied Spencer's motion for a mistrial on this basis. On appeal, Spencer argued that he had been deprived of a fair trial by the prosecutor's argument on this point. However, this Court concluded that a mistrial was not warranted on this basis. See id. at 383. Thus, appellate counsel raised this very issue on appeal and cannot be deemed ineffective for failing to prevail on a claim raised and rejected on appeal. See Teffeteller v. Dugger, 734 So.2d at 1020 ("Counsel cannot be deemed ineffective for failing to prevail on a meritless issue.").
During the prosecutor's questioning of a law enforcement officer about the crime scene, the officer stated that the victim's "little white poodle dog" was removed from the house before the forensic technicians arrived. Upon objection by defense counsel, the prosecutor rephrased the question and no further information about the dog was introduced into evidence. Spencer claims that appellate counsel was ineffective for not raising the issue of this "improperly melodramatic, irrelevant, testimony" on direct appeal. Appellate counsel's failure to raise this issue did not constitute deficient performance. As we have explained, appellate counsel will not be considered ineffective for failing to raise issues that have little or no chance of success. See Engle v. Dugger, 576 So.2d 696, 703 (Fla.1991). There was no allegation that Spencer harmed the dog. The jury merely heard that the victim had a dog which was removed in order not to contaminate the crime scene.
Spencer also claims that appellate counsel was ineffective for failing to raise several other instances of prosecutorial misconduct even though no objection was raised at trial. This Court has stated that appellate counsel cannot be ineffective for failing to raise claims which were not preserved due to trial counsel's failure to object. See, e.g., Ferguson v. Singletary, 632 So.2d 53, 58 (Fla.1993) (finding appellate counsel was not ineffective in failing to raise allegedly improper comments by the prosecutor which were not preserved for appeal by objection). As a general rule, this Court has determined that failing to raise a contemporaneous objection when improper closing argument comments are made waives any claim concerning such comments for appellate review. See Brooks v. State, 762 So.2d 879, 898 (Fla. 2000). The sole exception to this general rule is where the unobjectedto comments rise to the level of fundamental error. See id.; Thomas v. State, 748 So.2d 970, 985 (Fla.1999). In order for an error to be fundamental and justify reversal in the absence of a timely objection, "the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error." Brown v. State, 124 So.2d 481, 484 (Fla. 1960); see also State v. Delva, 575 So.2d 643, 645 (Fla.1991). In order for improper comments made in the closing arguments of a penalty phase to constitute fundamental error, they must be so prejudicial as to taint the jury's recommended sentence. See Thomas, 748 So.2d at 985. For the reasons discussed below, we conclude that the instances of alleged prosecutorial misconduct cited by Spencer do not constitute fundamental error and thus appellate counsel did not render ineffective assistance in failing to raise the claims on appeal.
Spencer contends that appellate counsel should have raised a claim that the prosecutor engaged in "inflammatory histrionics" by putting on a pair of latex *75 gloves and displaying them to the jury and by exhibiting an emotional display in front of the jury during closing argument of the trial. Spencer argues that the prosecutor's display of latex gloves on her hands was "designed to ignite the raw emotions of the jury." The gloves, which were of the same type worn by Spencer on the day of the murder, had been admitted into evidence at trial without objection. At the evidentiary hearing on Spencer's rule 3.850 motion below, the prosecutor testified that she showed the gloves to the jury during closing argument as she considered them strong evidence of premeditation. Spencer offers no explanation of why this conduct was improper, how it played to the jury's emotions, or how it so tainted the trial "that a verdict of guilty could not have been obtained" without it. Thus, we conclude that this claim is legally insufficient. Further, we conclude that the prosecutor's display of the evidence in this manner was not improper.
As to the prosecutor's "emotional display" before the jury, the lower court found that the prosecutor did not cry in front of the jury. After viewing a videotape of the incident in question, the lower court concluded that the prosecutor's voice "quavered" for a few seconds, but she turned away from the jury and composed herself before proceeding with her closing argument. Based upon this record, we conclude that there is no factual basis for Spencer's claim of "inflammatory histrionics" by the prosecutor. Thus, appellate counsel was not ineffective in failing to raise this issue as fundamental error.
Spencer also asserts that the prosecutor's cross-examination of the two defense experts during the penalty phase included improper comment on his Fifth Amendment right not to testify and thus constituted fundamental error that counsel should have raised on direct appeal. During cross-examination in the penalty phase, the prosecutor questioned the defense experts about their interviews of Spencer and elicited testimony that Spencer had not been under oath when he recounted details of the crime and his background. The prosecutor also inquired whether Dr. Burch would "consider the type of testimony that the jury would have received ..., that being sworn testimony subject to cross-examination by the state and defense, as to be a superior form of fact finding for factual determination than what you did, just listening to Dusty Spencer's answers." Trial counsel raised no objection to the cross-examination of the experts on this point. Even though the issue was not preserved for appellate review, Spencer claims that appellate counsel should have raised this issue as fundamental error and was ineffective in failing to do so.
A defendant has the constitutional right to decline to testify against himself in a criminal proceeding. See U.S. Const. amend. V; art. I, § 9, Fla. Const. Therefore, "[a]ny comment on, or which is fairly susceptible of being interpreted as referring to, a defendant's failure to testify is error and is strongly discouraged." State v. Marshall, 476 So.2d 150, 153 (Fla. 1985); see also, e.g., Heath v. State, 648 So.2d 660, 663 (Fla.1994); State v. DiGuilio, 491 So.2d 1129, 1131 (Fla.1986). The "fairly susceptible" test is a "very liberal rule." DiGuilio, 491 So.2d at 1135. This constitutional principle is also incorporated in Florida Rule of Criminal Procedure 3.250, which prohibits a prosecuting attorney from commenting on the defendant's failure to testify on his or her own behalf.
Comments on a defendant's failure to testify can be of an "almost unlimited variety" and any remark which is "fairly susceptible" of being interpreted as a *76 comment on silence creates a "high risk" of error. DiGuilio, 491 So.2d at 1135-36. The prosecutor's questions here, which highlighted the fact that Spencer's accounts of the crime were not under oath, are "fairly susceptible" of being interpreted as a comment on Spencer's failure to testify. However, even erroneous comments do not require an automatic reversal, but instead "should be evaluated according to the harmless error rule." Marshall, 476 So.2d at 153; see also Rodriguez v. State, 753 So.2d 29, 39 (Fla. 2000). We conclude that any error in the comment by the prosecutor in the instant case was harmless beyond a reasonable doubt. See DiGuilio. Because any error in this regard was harmless, Spencer's claim that appellate counsel was ineffective in failing to raise the issue on direct appeal as fundamental error cannot satisfy the Strickland prejudice prong.
Spencer also contends that appellate counsel was ineffective for failing to raise the prosecutor's misrepresentation of the testimony of two witnesses as Giglio violations. However, as discussed in issue eight above, neither of these incidents constituted a Giglio violation. Thus, appellate counsel cannot be deemed ineffective for failing to raise a meritless issue. See Engle v. Dugger, 576 So.2d at 703.
Finally, Spencer argues that the cumulative impact of the proven instances of improper comment by the prosecutor deprived him of a fair trial. On direct appeal, this Court concluded that the prosecutor's reference to a matter outside the evidence was improper, but did not meet the requirements for a new trial. See Spencer v. State, 645 So.2d 377, 382 (Fla. 1994).[9] In these proceedings, we have concluded that the prosecutor's questions, highlighting the fact that Spencer's accounts of the crime to the mental health experts were not under oath, were harmless beyond a reasonable doubt. Further, when we consider the combination of both comments, we conclude that they were harmless beyond a reasonable doubt. See DiGuilio.
For the reasons discussed above, we conclude that Spencer is not entitled to relief and deny his petition for a writ of habeas corpus. We also affirm the trial court's denial of postconviction relief.
It is so ordered.
WELLS, LEWIS, and QUINCE, JJ., and HARDING, Senior Justice, concur.
ANSTEAD, C.J., PARIENTE, J., and SHAW, Senior Justice, concur in result only.
NOTES
[1] Huff v. State, 622 So.2d 982 (Fla.1993); see also Fla. R.Crim. P. 3.851(c).
[2] Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
[3] Giglio v. United States, 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
[4] In one instance, several jurors said good morning to the prosecutor, who did not respond to them. On another occasion, one of the jurors spoke to the victim's advocate from the Orange County Sheriff's Department who was sitting on a bench outside the courtroom. The juror told the advocate that he had brought a sweater with him to court instead of a jacket and the advocate responded that was nice. During trial, one of the jurors approached the prosecutor in the hall and stated that all of the jurors had taken a vote and they liked her jacket. She responded with a thank you and left. Also during trial, a juror walked into the State's witness room and spoke to the prosecutor while she was looking out a window. When the prosecutor turned around and informed the juror that he was not supposed to be talking to her, the juror stated that he thought she was one of the jurors and left the room.
[5] Rule Regulating the Florida Bar 4-3.5(d)(4) provides that a lawyer shall not after dismissal of the jury in a case with which the lawyer is connected, initiate communication with or cause another to initiate communication with any juror regarding the trial except to determine whether the verdict may be subject to legal challenge; provided, a lawyer may not interview jurors for this purpose unless the lawyer has reason to believe that grounds for such challenge may exist; and provided further, before conducting any such interview the lawyer must file in the cause a notice of intention to interview setting forth the name of the juror or jurors to be interviewed. A copy of the notice must be delivered to the trial judge and opposing counsel a reasonable time before such interview. The provisions of this rule do not prohibit a lawyer from communicating with members of the venire or jurors in the course of official proceedings or as authorized by court rule or written order of the court.
[6] Spencer alleges that the prosecutor: made improper references to inadmissible hearsay evidence that the victim carried a rifle around her house out of fear of Spencer; elicited irrelevant testimony that the victim's dog was removed from the crime scene; engaged in "inflammatory histrionics"; and made improper comment on Spencer's right not to testify.
[7] Spencer asserts that the prosecutor intentionally misrepresented the testimony of witnesses Timothy Johnson and Dr. Jonathan Lipman during her argument to the jury and this amounted to Giglio violations.
[8] Photographs taken during the investigation of the earlier "iron incident" were redacted to remove the deputy sheriff's identifications characterizing the attack on the victim as a battery.
[9] During the trial, the State attempted to introduce evidence that the victim was carrying a rifle around her house because she was afraid of Spencer. The court sustained the defendant's objection that this testimony was irrelevant to any issue at the trial. However, during closing argument the prosecutor stated that "Karen answered the door with the rifle in her hand" when a friend visited her on the night before the killing. The trial court sustained the defendant's objection to this comment, but denied his motion for a mistrial. This Court concluded that a mistrial was not warranted because the prosecutor's single comment about the rifle did not meet the requirements for a new trial (comment must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that it might have influenced the jury to reach a more severe verdict than that it would have otherwise). See Spencer v. State, 645 So.2d 377, 383 (Fla.1994).