PER CURIAM.
 

 Rodney Tyrone Lowe appeals an order of the trial court granting in part and denying in part his motion to vacate his conviction of first-degree murder and sentence of death filed pursuant to Florida Rule of Criminal Procedure 3.851. He also petitions this Court for a writ of habe-as corpus. The State cross-appeals, challenging the trial court’s order granting Lowe a new penalty phase. We have jurisdiction.
 
 See
 
 art. V, § 3(b)(1), (9), Fla. Const. For the reasons explained below, we affirm the trial court’s order and deny habeas relief.
 

 FACTS AND PROCEDURAL HISTORY
 

 Rodney Tyrone Lowe was charged with and convicted of attempted robbery and the first-degree murder of Donna Burnell. Lowe was sentenced to death for his participation in the crimes. On direct appeal, we summarized the facts of the crime as follows. On the morning of July 3, 1990, Donna Burnell was working as a clerk at the Nu-Pack convenience store in Indian River County when a would-be robber shot her three times with a .32 caliber handgun. Burnell suffered gunshot wounds to the face, head, and chest and died on the way to the hospital. The killer fled the scene without taking any money from the cash drawer. During the week following the shooting, investigators received information linking the defendant, Rodney Lowe, to the crime. Lowe was questioned by investigators at the police station and, after speaking to his girlfriend, gave a statement that implicated himself in the murder. Following this statement, Lowe was arrested and indicted for first-degree murder and attempted robbery.
 

 At trial, the State presented witnesses who testified that, among other things, Lowe’s fingerprint had been found at the scene of the crime, his girlfriends car was seen leaving the parking lot of the Nu-Pack immediately after the shooting, his gun had been used in the shooting, his time card showed that he was clocked-out from his place of employment at the time of the murder, and Lowe confessed to a close friend on the day of the shooting. The State also presented, over defense objection, the statement Lowe gave to the police on the day of his arrest. Lowe advanced no witnesses or other evidence in his defense.
 

 At the conclusion of the penalty phase, the jury, by a vote of nine to three, recommended the imposition of the death penalty. The judge followed the jury’s recommendation and imposed the death penalty, finding two aggravating circumstances, specifically: (1) the defendant was previously convicted of a felony involving the use or threat of violence to the person; and (2) the capital felony was committed while the defendant was engaged in or was an accomplice in an attempt to commit robbery. In imposing the death penalty, the trial judge expressly found the mitigating circumstances did not outweigh the aggravating factors. The trial judge also sentenced Lowe to fifteen years’ imprisonment for the attempted robbery conviction.
 

 On direct appeal, Lowe raised seventeen issues — ten guilt phase issues and seven
 
 *28
 
 penalty phase issues.
 
 [1]
 
 This Court rejected Lowes arguments on all claims and affirmed his convictions and sentence of death.
 
 Lowe v. State,
 
 650 So.2d 969 (Fla.1994).
 

 On March 19, 1997, Lowe filed his initial motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.851. After Lowe filed several amended postconviction motions and amendments to these motions, the trial court held a
 
 Huff
 

 [2]
 

 hearing. Subsequently, the trial court entered an order denying twelve of the thirty-three claims and held an evidentiary hearing on the remaining claims. After the evidentiary hearing, Lowe filed two supplemental claims, and an additional evi-dentiary hearing was set for the Brady
 
 [3]
 
 violation claim. On August 11, 2004, the trial court issued an order denying all of Lowe’s claims in his second amended post-conviction motion.
 

 On August 26, 2004, Lowe filed a successive postconviction motion based on newly discovered evidence and also filed a motion for rehearing. On November 23, 2004, the trial court held a hearing on the motion for rehearing and the first successive postcon-viction motion. On January 13, 2005, Lowe filed a second successive postconviction motion based on newly discovered evidence. On March 2, 2005, Lowe filed an
 
 *29
 
 amendment to his second successive post-conviction motion. However, before the State could respond to this motion, on March 18, 2005, the trial court issued an order denying a new trial but granting a new penalty phase based on the motion for rehearing and the first successive motion. Lowe has appealed the denial of part of his postconviction motion, raising five claims, and has also filed a petition for writ of habeas corpus, raising three claims. The State has cross-appealed.
 

 RULE 3.851 APPEAL
 

 Lowe raises the following five claims on appeal: (1) he was denied an adversarial testing at the guilt phase of his trial because trial counsel was ineffective, the State suppressed material exculpatory evidence, and newly discovered evidence has been disclosed, and for these reasons the jury did not know that Dwayne Blackmon was the shooter; (2) evidence that Lowe did not act alone was never presented to the jury because counsel failed to properly investigate and the State withheld evidence that multiple parties were involved in the crime; (3) because counsel was ineffective and the State withheld material evidence, critical impeachment of Dwayne Blackmon was never presented to the jury; (4) trial counsel rendered ineffective assistance by failing to object to irrelevant and inflammatory evidence; and (5) trial counsel rendered ineffective assistance by failing to challenge the admissibility of Lowe’s statement on the ground that it was obtained in violation of his Fifth Amendment rights, and by failing to impeach Patricia White. The State cross-appeals and argues that the trial court failed to follow the law when it granted a new penalty phase based on claims of ineffective assistance and newly discovered evidence relating to allegations that Dwayne Blackmon confessed to killing the victim. We affirm the trial court’s denial of relief on all claims raised by Lowe, and affirm the trial court’s order granting a new penalty phase.
 

 Lowe argues that for various reasons trial counsel rendered ineffective assistance during his trial. In order to prevail on a claim of ineffective assistance of counsel, a defendant must show that trial counsel’s performance was deficient and that the deficient performance prejudiced the defendant so as to deprive the defendant of a fair trial.
 
 See Strickland v. Washington,
 
 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984);
 
 see also Wiggins v. Smith,
 
 539 U.S. 510, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (affirming the
 
 Strickland
 
 two-prong analysis for claims of ineffective assistance of counsel). As to the first prong, the defendant must establish that “counsel made errors so serious that counsel was not functioning as the ‘counsel’ guaranteed the defendant by the Sixth Amendment.”
 
 Strickland,
 
 466 U.S. at 687, 104 S.Ct. 2052;
 
 see also Cherry v. State,
 
 659 So.2d 1069, 1072 (Fla.1995). For the second prong, the reviewing court must determine whether there is a reasonable probability that, but for the deficiency, the result of the proceeding would have been different.
 
 See Strickland,
 
 466 U.S. at 694, 104 S.Ct. 2052. “A reasonable probability is a probability sufficient to undermine confidence in the outcome.”
 
 Id.
 
 “Unless a défendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.”
 
 Id.
 
 at 687, 104 S.Ct. 2052.
 

 Generally, this Court’s standard of review following a denial of a postcon-viction claim where the trial court has conducted an evidentiary hearing accords deference to the trial court’s factual findings.
 
 McLin v. State,
 
 827 So.2d 948, 954 n. 4 (Fla.2002). “As long as the trial court’s findings are supported by compe
 
 *30
 
 tent substantial evidence, ‘this Court will not substitute its judgment for that of the trial court on questions of fact, likewise of the credibility of the witnesses as well as the weight to be given to the evidence by the trial court.’ ”
 
 Blanco v. State,
 
 702 So.2d 1250, 1252 (Fla.1997) (quoting
 
 Demps v. State,
 
 462 So.2d 1074, 1075 (Fla.1984)). However, the circuit court’s legal conclusions are reviewed de novo.
 
 See Sochor v. State,
 
 883 So.2d 766, 771-72 (Fla.2004).
 

 Evidence Regarding Dwayne Blackmon
 

 Ineffective Assistance of Counsel
 

 Lowe contends that trial counsel was ineffective for failing to present the testimony of Lisa Miller and Ben Carter that Blackmon admitted to killing the victim. Lowe indicates that Miller and Carter both testified at the evidentiary hearing that they were present when Blackmon admitted to his involvement in the robbery and the killing of the victim.
 

 At the evidentiary hearing, Miller testified that a few months after the murder, she was at Blackmon and Carter’s grandmother’s house with Carter, Blackmon, Brenda Shuh, and Blackmon’s wife, Victoria Blackmon. According to Miller’s testimony, while they were at the grandmother’s house Blackmon stated, “I killed one bitch. I’ll do it again.” After making that statement, Blackmon began talking to Carter about the details of the robbery and the shooting, and Blackmon mentioned Lowe’s name. According to Miller, Black-mon explained that he, Lorenzo Sailor, and Lowe went to the store, Lowe and Black-mon went inside the store, and Lowe went to a cooler to get a soda while Blackmon was at the counter. Blackmon then admitted that he shot the victim. After explaining the details, Blackmon stated, “Them fools believe me,” “and now I’m gonna walk.” However, Miller clarified that she was not testifying that Blackmon committed the crime and that Lowe had nothing to do with the crime. Miller further testified that she talked to several detectives about what she heard regarding Black-mon’s confession.
 

 Carter also testified at the evidentiary hearing that Blackmon admitted to his involvement in the robbery and murder while they were at his grandmother’s house. According to Carter, Blackmon admitted that he shot and killed the victim, and that he would do it again. Carter testified Blackmon told him that first Sail- or went into the store, and when he came out, Lowe and Blackmon went into the store. However, it was not clear from Carter’s testimony of Blackmon’s rendition of the story whether Lowe was in the store when Blackmon shot the victim. Carter further testified that Blackmon mentioned on several occasions that he got away with the shooting. Carter also admitted that Blackmon never said that Lowe did not participate in the crime.
 

 The trial court found that although defense counsel was deficient for failing to present Miller and Carter’s testimony at trial, Lowe failed to establish prejudice under
 
 Strickland.
 
 With regard to deficiency, the trial court noted that the testimony of both witnesses would have been admissible to impeach Blackmon’s trial testimony that he was not involved in the crime. However, Lowe failed to establish prejudice because this new evidence does not negate the abundant evidence that proves Lowe was involved in the attempted robbery at the store. In denying relief, the court emphasized that the jury was instructed on the alternative theories of first-degree premeditated murder and first-degree felony murder.
 

 We agree with the trial court’s finding that Lowe fails to demonstrate
 
 *31
 
 prejudice. Even if defense counsel was deficient for failing to present Miller and Carter’s testimony to rebut Blackmon’s testimony, there is not a reasonable probability that their testimony would have resulted in an acquittal of Lowe of first-degree murder — that is, a probability sufficient to undermine our confidence in the outcome of the guilt phase. Both Carter and Miller admitted that Blackmon did not say that Lowe was not involved in the crime. Moreover, other trial evidence demonstrates that Lowe was involved in committing the crime, including, but not limited to, Lowe’s fingerprints being found on the hamburger wrapper inside the store, Lowe’s own confession that he was involved in the crime, a witness’s testimony that he saw Lowe’s girlfriend’s car in the parking lot immediately following the shooting, evidence that Lowe’s gun was used in the shooting, and evidence that Lowe’s time card showed that he was clocked out from work at the time of the murder. Because there is physical and circumstantial evidence that demonstrates that Lowe was involved in the crime, the jury would have still found Lowe guilty of first-degree felony murder.
 

 Therefore, we affirm the trial court’s denial of relief on this claim.
 

 Brady
 
 Violation
 

 Lowe also asserts that the State failed to turn over material, exculpatory evidence from Lisa Miller and Michael Lee to the defense. To establish a
 
 Brady
 
 violation, a defendant must establish that: (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence has been suppressed by the State, either willfully or inadvertently; and (3) the defendant has been prejudiced by the suppression of this evidence.
 
 See Spencer v. State,
 
 842 So.2d 52, 67 (Fla.2003). Furthermore, to satisfy the prejudice prong, a defendant must show that “there is a ‘reasonable probability’ that the result of the trial court would have been different if the suppressed documents had been disclosed to the defense.”
 
 Id.
 
 at 67-68 (quoting
 
 Strickler v. Greene,
 
 527 U.S. 263, 289, 119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)). A reasonable probability in a
 
 Brady
 
 analysis is a probability sufficient to undermine confidence in the outcome.
 
 Way v. State,
 
 760 So.2d 903, 913 (Fla.2000);
 
 see also Strickler,
 
 527 U.S. at 290, 119 S.Ct. 1936. “The remedy of retrial for the State’s suppression of evidence favorable to the defense is available when ‘the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.’ ”
 
 Taylor v. State,
 
 33 Fla. L. Weekly S410, S412 (Fla. June 19, 2008) (quoting
 
 Kyles v. Whitley,
 
 514 U.S. 419, 435, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995)).
 

 At the evidentiary hearing, Miller testified that she talked to several detectives about what she heard from Blackmon. These detectives testified at the evidentia-ry hearing that they never received information from Miller regarding Lowe’s case or evidence that Blackmon was involved in the crime and killed the victim. The trial court resolved this credibility issue by finding the detectives were not aware of this evidence.
 

 We find that there is competent, substantial evidence ■ to support the trial court’s findings. Miller, who had several felony convictions, testified that on several occasions, she spoke with different detectives about Blackmon’s alleged involvement in the crime. However, three detectives rebutted that claim. In fact, one detective even stated that Miller was a confidential informant for the police department regarding other crimes, but he never received information from her regarding Lowe’s case. We will not substi
 
 *32
 
 tute our judgment for that of the trial court regarding the credibility of Miller’s testimony and the detectives’ testimony.
 

 Lowe also asserts that Michael Lee had information about Blackmon’s participation in the crime, and that the State failed to turn this information over to the defense. According to Lowe, while Lee was sitting in jail, a detective talked to Lee about Blackmon’s involvement in the crime. The only evidence presented to support this claim was the testimony of Investigator Jeff Walsh, who testified at the evidentiary hearing that when he became involved in Lowe’s case in 1999 or 2000, he received a letter that was addressed to the former director of the Office of Capital Collateral Regional Counsel regarding information to the effect that Lee had said that Blackmon was the shooter. However, Investigator Walsh had not been able to locate Lee. We find that this claim lacks merit because Lowe presented no evidence that the State withheld evidence from the defense. Additionally, Lowe never identified which detective visited Lee in jail to talk about Blackmon’s involvement in the crime.
 

 Because Lowe fails to prove a
 
 Brady
 
 violation, we find that the trial court properly denied relief on this claim.
 

 Newly Discovered Evidence
 

 Lowe also contends that newly discovered evidence through the statements of Lisa Grone, Maureen McQuade, and David Stinson establishes that Blackmon admitted to killing the victim, and that presentation of this evidence would have resulted in an acquittal.
 

 Lisa Grone testified at the evidentiary hearing, and both Maureen McQuade and David Stinson provided affidavits. Grone testified that while she was dating Black-mon in 2003, Blackmon admitted that he was involved in the crime, and that he shot the victim. Grone also testified that when Blackmon talked about the murder, he stated that Lowe was in the store with him. McQuade, in her January 11, 2005, affidavit, stated that she met Blackmon in the late 1990s, and she lived with him for about two and a half years. She stated that while they were living together, Blackmon confessed several times to his involvement in the crime, stating that he killed the victim. Blackmon also told her that Lowe had been sent to death row for the murder of the woman. David Stinson, in his January 11, 2005, affidavit, also stated that Blackmon confessed to his involvement in the crime and to shooting the victim. Stinson further stated that it was common knowledge in the community that Blackmon had been involved in the murder, that he shot the woman, and that he had gotten away with it.
 

 To obtain a new trial based on newly discovered evidence, a defendant must meet two requirements. First, the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and it must appear that the defendant or defense counsel could not have known of it by the use of diligence. Second, the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.
 
 See Jones v. State,
 
 709 So.2d 512, 521 (Fla.1998)
 
 (Jones III).
 
 Newly discovered evi dence satisfies the second prong of the
 
 Jones III
 
 test if it “weakens the case against [the defendant] so as to give rise to a reasonable doubt as to his culpability.”
 
 Jones III,
 
 709 So.2d at 526 (quoting
 
 Jones v. State,
 
 678 So.2d 309, 315 (Fla.1996)
 
 (Jones II)).
 

 In determining whether the evidence compels a new trial, the trial court must “consider all newly discovered evidence which would be admissible,” and must “evaluate the ‘weight of both the newly discovered evidence and the evi
 
 *33
 
 dence which was introduced at the trial.’ ”
 
 Id.
 
 at 521 (quoting
 
 Jones v. State,
 
 591 So.2d 911, 916 (Fla.1991)
 
 (Jones
 
 I)). This determination includes
 

 whether the evidence goes to the merits of the case or whether it constitutes impeachment evidence. The trial court should also determine whether this evidence is cumulative to other evidence in the case. The trial court should further consider the materiality and relevance of the evidence and any inconsistencies in the newly discovered evidence.
 

 Jones III,
 
 709 So.2d at 521 (citations omitted).
 

 The trial court denied relief on this claim, and found that although the statements of Grone, McQuade, and Stin-son satisfied the first prong of the newly discovered evidence standard, all three statements failed to rebut any of the evidence supporting Lowe’s first-degree murder conviction under the theory of felony murder. We agree. Because the three statements were not made until after Lowe’s trial was completed, this evidence could not have been known by counsel at the time of trial. However, these statements are not of such a nature that they would produce an acquittal. Although these statements could have been used to impeach Blackmon’s credibility and his trial testimony that he was not involved in the crime, these statements would not have contradicted or provided an innocent explanation for any of the other evidence presented at trial indicating that Lowe was an active participant in the crime.
 

 Accordingly, because the newly discovered evidence of these statements does not satisfy the second prong of
 
 Jones,
 
 we affirm the trial court’s denial of relief on this claim.
 

 Cumulative Prejudice
 

 Lowe’s final claim on this issue is that the cumulative effect of the alleged errors requires that he receive a new trial. However, because Lowe’s individual claims are without merit, his cumulative error claim must fail.
 
 See Griffin v. State,
 
 866 So.2d 1, 22 (Fla.2003) (“[W]here individual claims of error alleged are either procedurally barred or without merit, the claim of cumulative error must fail.”);
 
 Vining v. State,
 
 827 So.2d 201, 219 (Fla.2002) (holding that where alleged individual errors are without merit, the contention of cumulative error is similarly without merit);
 
 Downs v. State,
 
 740 So.2d 506, 509 (Fla.1999) (concluding that where allegations of individual error do not warrant relief, a cumulative error argument based thereon is without merit). Accordingly, Lowe is not entitled to relief on this claim.
 

 Involvement of Multiple Parties in the Crime
 

 Lowe argues counsel was ineffective based on counsel’s failure to present the testimony regarding the dying declaration of Donna Burnell, who stated that she did not know the perpetrator. Lowe asserts that this testimony would have demonstrated that Lowe was not the perpetrator because Lowe knew who Burnell was. At trial, Sergeant Ewert testified that he saw Burnell lying on the floor in the store when he arrived on the scene. He testified that when he asked Burnell a series of questions, Burnell repeatedly answered “no” to the questions. On cross-examination, defense counsel failed to ask Sergeant Ewert what questions he asked Burnell that received “no” answers. During post-conviction proceedings, postconviction counsel introduced a report by Sergeant Ewert that stated that Burnell responded no when he asked her if she knew who shot her. Defense counsel testified at the hearing that he did not recall Lowe’s statement where Lowe stated that he knew the victim. However, after defense counsel
 
 *34
 
 reviewed Sergeant Ewert’s report and a portion of Lowe’s statement, which was admitted at trial and where he indicated that he knew the victim from her prior employment at another store he frequented, counsel testified that the information may have had some impact, but he did not know how much.
 

 The trial court denied relief based on the finding that Lowe failed to establish at the evidentiary hearing that Burnell knew Lowe. The trial court stated that although Lowe may have known Burnell if he saw her, there was no evidence that she knew him by name or by sight. We agree. First, Lowe speculates that because he knew Burnell, it means that Burnell must have known him. There is no indication in Lowe’s statement to the police that Burnell knew him. Moreover, although postconviction counsel introduced a report during the evidentiary hearing in which Sergeant Ewert stated that Burnell responded no when he asked her if she knew who shot her, this is not enough evidence to demonstrate that Burnell knew Lowe by name or by sight. Thus, this claim is meritless.
 

 Next, Lowe argues ineffectiveness based on counsel’s failure to challenge the time period analysis used by the State to demonstrate that Lowe committed the crime alone. Lowe argues that this videotape was irrelevant and highly prejudicial, and the running commentary included numerous improper conclusions as to ultimate facts and instances of speculation that were extremely prejudicial to Lowe.
 

 At the evidentiary hearing, defense counsel testified that if he had grounds to object to the videotape, he would have objected. Don Felicella, a licensed engineer who does expert witness work in accident reconstruction, also testified at the evidentiary hearing regarding the videotapes made by the detectives. He opined that after reviewing a copy of the video several times and doing some independent research by using reference texts and the internet, he did not find the time study valid. However, he admitted that he did not conduct his own time study on the traveled route provided by the detectives. Based on this testimony, the trial court found that Lowe failed to establish that the time studies were unreliable.
 

 The State sought to introduce the videotape during the guilt phase because its theory was that Lowe acted alone. Thus, the time study was conducted to prove that Lowe would not have had time to pick up Sailor and Blackmon before going to the store and then dropping them off before returning to work. As a result, the video reenactment was relevant to prove Lowe’s guilt of the crime. Although Mr. Felicella testified that the time study was not valid, he offered no study of his own to rebut this time study or to demonstrate that it was unreliable. Because Lowe fails to demonstrate deficiency or prejudice under
 
 Strickland,
 
 this claim was properly denied.
 

 In the next claim, Lowe contends that due to the State’s suppression of evidence and counsel’s ineffectiveness, the jury never knew that a child eyewitness to the shooting, Danny Butts, made multiple consistent statements that more than one person was involved in the crime. Lowe first argues that a child does not have to be held competent to testify in order for the child’s hearsay statements to be admitted into evidence. Lowe also argues that Danny’s statements met the requirements of the excited utterance exception to the hearsay rule because his statements were made immediately after he saw his mother get shot. The trial court concluded that, with regards to both arguments, this claim was procedurally barred, and in the alternative, it was also meritless.
 

 
 *35
 
 With regard to the competency argument, we find the claim to be procedurally barred. On direct appeal, this Court addressed this claim extensively and reviewed the record thoroughly before holding that the trial court did not abuse its discretion in excluding Danny’s testimony.
 
 Lowe,
 
 650 So.2d at 975. We noted that at the hearing on the motion in limine, Danny’s father testified that Danny had a learning disability and did not know his numbers. This testimony was also corroborated by a family friend. In addition, we noted that the trial court reviewed a videotaped deposition of Danny. We referred to a portion of Danny’s deposition testimony that clearly indicated Danny did not understand that he was referring to a number when he stated that “two” people shot his mother.
 
 Id.
 
 at 976 n. 7. Lowe argues that the trial court would not have granted the motion if counsel had presented evidence of additional consistent statements by Danny that more than one person was involved. However, this argument lacks merit because even if counsel had presented this additional evidence, there is not a reasonable probability that the trial court would have found Danny competent to testify because Danny’s deposition proved that he was unable to count or express numbers accurately.
 

 Additionally, counsel cannot be deemed ineffective for failing to make an argument concerning the excited utterance exception to the hearsay rule because he did, in fact, make this argument. The trial court did not reach the merits of this claim because it decided that Danny was incompetent to testify.
 
 Id.
 
 at 975 n. 6. Moreover, the claim is without merit because Danny’s statement does not meet the standard for admissibility under the excited utterance exception. In determining whether the necessary mental state exists under the excited utterance exception, the trial court should consider the length of time between the statement and the startling event, the age of the declarant, the physical and mental condition of the de-clarant, the characteristics of the event, and the subject matter of the statements.
 
 State v. Jano,
 
 524 So.2d 660 (Fla.1988);
 
 see also
 
 Charles W. Ehrhardt,
 
 Florida Evidence
 
 § 803.2, at 848^49 (2007 ed.). Based on Danny’s deposition testimony, it is clear that Danny had a learning disability, especially concerning numbers. Therefore, Danny’s statement did not meet the criteria for admissibility under this exception.
 

 Finally, Lowe contends that counsel was ineffective for failing to properly cross-examine Steve Leudtke about the results of a lineup he viewed in which he identified two people who were somewhat similar to the person he saw leaving the store and about the fact that Lowe was not one of the persons identified at that lineup. The trial court found that Lowe failed to meet either prong of
 
 Strickland.
 

 At trial, Leudtke testified to the description of the man he saw leaving the store after the shooting. Although he testified to the description, he also testified that he could not positively identify the person that he saw coming out of the store. He said he was not willing to point the perpetrator out in court and say absolutely that that was the person he saw leaving the store immediately following the shooting. During cross-examination, defense counsel questioned Leudtke extensively regarding the description he provided to the police officers on the day of the crime and the composite he drew at the police department. Defense counsel asked Leudtke if he had been able to positively identify anyone in the lineup, and Leudtke said he had not been able to do so. Although he did not ask the specific question that Lowe contends counsel should have asked, coun
 
 *36
 
 sel did ask Leudtke whether he had been able to positively identify anyone in the lineup. Moreover, Lowe fails to establish prejudice because counsel’s alleged failure to ask this one specific question did not undermine confidence in the outcome of the guilt phase proceeding. The trial court properly denied relief on this claim.
 

 Impeachment of Dwayne Blackmon
 

 Lowe argues that counsel was ineffective for failing to impeach Blackmon with an affidavit Blackmon signed on October 26,1990. This affidavit contains assertions that law enforcement officers made serious threats against Blackmon and made promises of legal and monetary assistance in order to persuade him to testify for the State in Lowe’s case. Lowe further contends that later, during an investigative interview with the State Attorney’s Office, Blackmon, in a sworn statement, attempted to recant his affidavit and accused the assistant public defenders of forcing him to sign the affidavit even though some of the facts in the affidavit were not true.
 

 At the evidentiary hearing, defense counsel testified that he believed Black-mon was an important State witness, but he did not remember the affidavit, did not remember if he questioned Blackmon about the affidavit, and did not remember the sworn statement made by Blackmon subsequent to the affidavit. Blackmon testified at the hearing that although the assistant public defenders did not force him to sign the affidavit, most of the statements in the affidavit were either lies or statements that had been twisted. Based on this testimony and a review of the affidavit and sworn statement, the trial court found that the effectiveness of the affidavit for impeachment purposes was questionable because the two documents did not appear inconsistent. The trial court also found that even if the affidavit had been presented, Lowe failed to demonstrate prejudice based on the evidence that connected Lowe to the crime.
 

 We agree with the trial court’s findings. Although impeaching Blackmon’s credibility with the affidavit could have called into question Blackmon’s ability to tell the truth, Lowe fails to demonstrate that the failure to impeach undermined confidence in the outcome of the guilt phase proceeding because of the evidence that implicated him in the crime, including, but not limited to, his fingerprints being found at the crime scene and his confession of involvement in the crime. Thus, relief on this claim was properly denied.
 

 Lowe next contends that the State withheld evidence that Blackmon was a paid police informant for the Sebastian Police Department, and that counsel was ineffective for failing to discover this evidence through due diligence. Relief on this claim was properly denied because the claim is not sufficiently pled. The only evidence that Lowe provides to support this claim is the evidentiary hearing testimony of Ben Carter. Carter testified that he was aware that Blackmon had some kind of relationship with a few police officers in the Sebastian Police Department because he went with Blackmon several times to the police department where Blackmon would turn in items that had been stolen from homes. However, Lowe fails to provide any evidence or testimony to demonstrate how the State suppressed this evidence or how he was prejudiced by the suppression of the evidence. With regard to the argument that counsel was ineffective for failing to present such evidence, Lowe fails to satisfy, or at a minimum even address, the
 
 Strickland
 
 standard. Accordingly, we affirm the denial of relief on this claim.
 

 Failure to Object to Inflammatory and Irrelevant Evidence
 

 Lowe next alleges ineffectiveness based on counsel’s failure to object to four pieces
 
 *37
 
 of evidence that he claims were irrelevant and inflammatory: (1) the presentence investigation report (PSI)
 
 [4]
 
 ; (2) sunglasses; (3) unredacted portions of Lowe’s statement to police officers; and (4) the videotaped police “re-enactment” of the crime.
 
 [5]
 

 With regard to the sunglasses, Lowe contends that the State offered the sunglasses to suggest to the jury that these sunglasses were the glasses worn by the person Leudtke saw leaving the store after the robbery and shooting. Lowe asserts that because of counsel’s ineffectiveness, the jury never learned that the glasses worn by that person were not sunglasses. This claim lacks merit because defense counsel did argue that the glasses as described by Leudtke and the sunglasses introduced into evidence were different. At trial, Leudtke never testified to the type of glasses the person leaving the store was wearing. He simply testified that he saw the man wearing glasses. Although defense counsel did not question Leudtke’s description of the glasses during cross-examination, during closing arguments, defense counsel emphasized that Leudtke testified that the glasses he noticed were wire-rim glasses, and the investigators went to Lowe’s house looking for wire rim glasses. However, when the investigators could not find these glasses, they threw in “a substitute” that were not wire-rim glasses. Counsel pointed out this difference to the jury, indicating that the sunglasses that were introduced into evidence as belonging to Lowe were not the same glasses that were seen on the man leaving the store after the shooting. Counsel cannot be deemed deficient when he did point out the difference in the glasses to the jury. Lowe also fails to show prejudice because this Court found on direct appeal that the introduction of the sunglasses was relevant, and in the alternative, the introduction of the contents of the box, which included the sunglasses, was harmless.
 

 Lowe also argues that counsel was ineffective for failing to object to numerous prejudicial statements contained in Lowe’s statement to the police. The trial court denied relief and concluded that the claim was procedurally barred. We agree. Every portion of this claim was raised on direct appeal, and this Court did not find merit to any of the arguments.
 
 Lowe,
 
 650 So.2d at 972-74. Counsel cannot be deemed ineffective when Lowe’s claim that his confession should have been suppressed and certain portions should not have been admitted into evidence was found to lack merit on direct appeal.
 
 See Moore v. State,
 
 820 So.2d 199 (Fla.2002) (holding that because defendant’s claim of prosecutorial misconduct was raised on direct appeal and was found to have no merit, the claim under the guise of ineffective assistance of counsel was procedurally barred);
 
 see also Hardwick v. Dugger,
 
 648
 
 *38
 
 So.2d 100 (Fla.1994) (issues that were raised on direct appeal are procedurally barred and cannot be raised in a postcon-viction motion).
 

 On direct appeal, this Court found that “any error in admitting the unredacted portions of the tape was not fundamental error.”
 
 Lowe,
 
 650 So.2d at 974. Because the Court found no fundamental error, Lowe fails to demonstrate that counsel’s failure to object to the comments resulted in prejudice sufficient to undermine the outcome of the trial under
 
 Strickland. See Chandler v. State,
 
 848 So.2d 1031, 1046 (Fla.2003) (“Because Chandler could not show the comments were fundamental error on direct appeal, he likewise cannot show that trial counsel’s failure to object to the comments resulted in prejudice sufficient to undermine the outcome of the case under the prejudice prong of the
 
 Strickland
 
 standard.”).
 

 Because Lowe fails to demonstrate deficiency or prejudice under
 
 Strickland
 
 for any of these claims, postconviction relief is not warranted on this claim.
 

 Failure to Challenge the Admissibility of Lowe’s Statement
 

 Lowe argues that counsel was ineffective for failing to impeach Lowe’s girlfriend, Patricia White, with her deposition testimony at the hearing on the motion to suppress Lowe’s statement. This claim is procedurally barred.
 
 [6]
 

 Lowe contends that White’s evi-dentiary hearing testimony is newly discovered evidence, and argues that in her evidentiary hearing testimony, White recanted her trial testimony by testifying that the detectives coerced her into speaking with Lowe and getting a confession from him. To obtain a new trial based on newly discovered evidence, a defendant must meet two requirements: (1) the evidence must not have been known by the trial court, the party, or counsel at the time of trial, and (2) the newly discovered evidence must be of such nature that it would probably produce an acquittal on retrial.
 
 See Jones v. State,
 
 709 So.2d 512, 521 (Fla.1998)
 
 (Jones
 
 III). Furthermore, to determine “whether a new trial is warranted due to recantation of a witness’s testimony, a trial judge is to examine all the circumstances of the case, including the testimony of the witnesses submitted on the motion for a new trial. ‘Moreover, recanting testimony is exceedingly unreliable, and it the duty of the court to deny a
 
 *39
 
 new trial where it is not satisfied that such testimony is true. Especially is this true where the recantation involves a confession of perjury.’ ”
 
 Consalvo v. State,
 
 937 So.2d 555, 561 (Fla.2006) (quoting
 
 Armstrong v. State,
 
 642 So.2d 730, 735 (Fla.1994)). Furthermore, “[ajbsent an abuse of discretion, a trial court’s decision on a motion based on newly discovered evidence [including a witness’s newly recanted testimony] will not be overturned on appeal.”
 
 Mills v. State,
 
 786 So.2d 547, 549 (Fla.2001).
 

 At the evidentiary hearing, White testified that the detectives asked her to talk to Lowe to get a confession, and if she could, the charges against her would go away. She admitted that what she was saying at the evidentiary hearing was different from her other testimony, but said she lied during the other testimony because at the time of the trial, she was seventeen years old and pregnant, and did not want to go to jail. She testified that her life was different now and she wanted to make amends because what she did was wrong. Detective Green testified at the evidentia-ry hearing that he never threatened White to get her to speak with Lowe, and that he never told her to testify falsely in any court proceeding. In denying relief on this claim, the trial court found that White’s evidentiary hearing testimony was unreliable.
 

 Although White’s evidentiary hearing testimony meets the first prong of the
 
 Jones
 
 standard because her testimony about what happened at the police department did not change until postconviction proceedings, we find that the trial court did not abuse its discretion in denying a new trial. In assessing the reliability of White’s evidentiary hearing testimony, the court examined the evidence presented at the evidentiary hearing, the evidence presented at trial, and all other circumstances of the case. Therefore, the trial court properly found that White’s recent statement at the evidentiary hearing was not credible and it would not have changed the outcome of Lowe’s trial.
 
 See, e.g., Kormondy v. State,
 
 983 So.2d 418 (Fla.2007) (finding that the trial court acted within its discretion in denying a new trial based on newly discovered evidence in the form of codefen-dant’s recanted statement because code-fendant was not credible). Postconviction relief was properly denied.
 

 State’s Cross-Appeal
 

 On cross-appeal, the State maintains the trial court erred in ordering a new penalty phase based on claims of ineffective assistance and newly discovered evidence relating to allegations that Dwayne Blackmon confessed to killing the victim. The State argues that in granting a new penalty phase based on new testimony that Black-mon was the shooter in the crime, the court ignored and failed to weigh the new testimony against the trial and evidentiary hearing testimony of witnesses establishing that Blackmon was not at the store when the robbery and murder occurred.
 

 During postconviction proceedings, Lowe contended that a new penalty phase was required on two bases: (1) ineffective assistance of counsel in the penalty phase for failure to discover and present the testimony of Lisa Miller and Ben Carter, who would have testified that Black-mon admitted to shooting and killing the victim in the crime, and (2) newly discovered evidence based on post-trial statements Blackmon made to Lisa Grone, Maureen McQuade, and David Stinson that Black-mon killed the victim. Before addressing each claim individually, we first address whether the testimony of Miller, Carter, Grone, McQuade, and Stinson would be admissible at a new penalty phase. Section 921.141(1), Florida Statutes (2007), provides, in pertinent part, that in a separate sentencing proceeding
 

 
 *40
 
 evidence may be presented as to any matter that the court deems relevant to the nature of the crime and the character of the defendant and shall include matters relating to any of the aggravating or mitigating circumstances enumerated in subsections (5) and (6). Any such evidence which the court deems to have probative value may be received, regardless of its admissibility under the exclusionary rules of evidence, provided the defendant is accorded a fair opportunity to rebut any hearsay statements.
 

 Although the statute “relaxes the eviden-tiary rules during the penalty phase of a capital trial, the statute clearly states that the defendant must have an opportunity to fairly rebut the hearsay evidence in order for it to be admissible. This rule applies to the State as well.”
 
 Blackwood v. State,
 
 777 So.2d 399, 411-12 (Fla.2000) (citation omitted). In the instant case, there is no indication that any of these individuals would be unavailable to testify at the new penalty phase, nor has the State shown that it would not have an opportunity to question any of these individuals if the defense had them testify at the new penalty phase. Moreover, the testimony of all five individuals would be relevant to help prove two mitigating circumstances that were raised by the defense in the penalty phase, but rejected by the trial court for lack of sufficient evidence.
 
 [7]
 
 Therefore, the testimony of all five individuals would be admissible at a new penalty phase proceeding.
 

 Lowe asserted that counsel was ineffective in the penalty phase for failing to discover and present evidence that before trial Blackmon admitted to Lisa Miller and Ben Carter that he, not Lowe, shot and killed the victim. In its order denying a new guilt phase, but granting a new penalty phase, the trial court applied
 
 Strickland
 
 and first found that counsel was deficient for failing to present the testimony of Carter and Miller during the penalty phase. The court then found that Lowe was prejudiced by counsel’s deficiency because both witnesses’ statements were sufficiently credible to warrant consideration by a penalty phase jury and the trial court in determining Lowe’s sentence. The court concluded that this undiscovered testimony undermined the jury’s recommendation of death as well as the trial court’s findings in the sentencing order that Lowe acted alone and that two of the mitigating factors argued by the defense were not established by the evidence.
 

 We find that counsel was ineffective under
 
 Strickland.
 
 The State’s theory of the case was that Lowe acted alone in the robbery and murder of Donna Burnell. During the guilt phase, the State had Blackmon, Blackmon’s former wife, Victoria Blackmon, and Lowe’s ex-girlfriend, Patricia White, testify to prove that Black-mon was home and sick in bed on the day of the crime. The State also introduced a time study analysis to show that Lowe could not have committed the crime with Blackmon or Sailor given the time period he was punched out of work that morning.
 

 A review of the record demonstrates that with due diligence, defense counsel could have discovered evidence to call into question Blackmon’s alibi and Blackmon’s contention that he did not participate in the crimes. During the eviden-tiary hearing, defense counsel admitted he knew Carter had some information about the crime because he was mentioned in a
 
 *41
 
 police report. Carter’s name was also mentioned in Detective Green’s deposition. The investigator for the defense on post-conviction, Jeff Walsh, testified that he came across Carter’s name in the police report. He then contacted and interviewed Carter who said that Blackmon confessed to his involvement in the crime and shooting the victim. Investigator Walsh also testified that Carter referred him to Miller as having information. As a result, Investigator Walsh sought out Miller, and Miller admitted that Blackmon had confessed to his involvement in the crime during a conversation at Blackmon’s grandmother’s house.
 

 Defense counsel also testified at the evi-dentiary hearing. He testified that he believed that Blackmon was somehow involved in the crime. Defense counsel also agreed that if he knew of a witness who knew that Blackmon was the person who shot the victim, he would have investigated further and attempted to get the person to testify in Lowe’s defense. At the hearing, Carter testified that it took him a long time to come forward with the information about Blackmon’s involvement because nobody asked him. He testified that if someone had contacted him, he would have testified about Blackmon’s involvement in the crimes. Counsel’s failure to investigate Carter to ascertain what information he had concerning the crimes fell below an objective standard of reasonableness. Therefore, we find that because this evidence demonstrates that counsel, through due diligence, could have discovered this information, counsel’s performance was deficient.
 

 We also find that Lowe successfully demonstrated that counsel’s failure to discover and present Carter and Miller’s testimony resulted in prejudice.
 
 [8]
 
 Both Miller and Carter testified that they were present at Blackmon’s grandmother’s house when Blackmon confessed to his involvement in the crime and that he shot the victim. Although we acknowledge that there were some inconsistencies between the testimony of Miller and that of Carter as to the specific details of the crime, both are in agreement that Blackmon admitted to being involved in the crime and that Blackmon admitted to shooting the victim.
 

 Additionally, the testimony of both witnesses provided credible support for two of the mitigating circumstances raised by defense counsel. In its sentencing order, the trial judge rejected both the disproportionate punishment mitigator and the relatively minor participation mitigator due to insufficient evidence. Thus, the trial judge did rely on the theory that Lowe acted alone in determining and weighing the mitigating circumstances.
 

 Furthermore, although there was evidence presented at trial that proved that Lowe was involved in the crime, there was no evidence presented that conclusively showed that Lowe was the perpetrator who shot and killed the victim. In his confession, Lowe admitted that he was involved in the crime, but also stated that Blackmon and Sailor were involved. Lowe’s fingerprints were found at the crime scene, but not on the weapon used to kill the victim. Blackmon gave Detective Green the weapon used in the murder. Leudtke testified that he saw Lowe’s girlfriend’s car in the parking lot immediately following the shooting; however, this observation does not conclusively prove that Lowe acted alone. Additionally, while Leudtke also testified that he saw one black male leaving the store immediately following the shooting, this statement also
 
 *42
 
 does not conclusively prove Lowe acted alone.
 

 Lowe has demonstrated both deficient performance and resulting prejudice under
 
 Strickland;
 
 therefore, a new penalty phase is warranted.
 

 PETITION FOR WRIT OF HAREM CORPUS
 

 Lowe raises three claims in his petition for writ of habeas corpus. He contends that: (1) appellate counsel was ineffective for failing to raise several claims on direct appeal; (2) Florida’s capital sentencing statute is unconstitutional on its face and as applied because it violates the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; and (3) Lowe’s death sentence is unconstitutional because the State used prior convictions based on acts committed by Lowe when he was a juvenile to establish an aggravating factor, in violation of the Eighth Amendment and
 
 Roper v. Simmons,
 
 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). As explained below, Lowe is not entitled to habeas relief on any of the claims.
 

 Ineffective Assistance of Appellate Counsel
 

 Claims of ineffective assistance of appellate counsel are properly raised in a petition for writ of habeas corpus addressed to the appellate court that heard the direct appeal.
 
 See Rutherford v. Moore,
 
 774 So.2d 637 (Fla.2000). The standard for proving ineffective assistance of appellate counsel follows the same two-prong test for an ineffective assistance of trial counsel claim under the
 
 Strickland
 
 standard.
 
 See Wilson v. Wainwright,
 
 474 So.2d 1162 (Fla.1985). Thus, when evaluating a claim for ineffective assistance of appellate counsel, this Court must determine: (1) whether the alleged omissions are of such magnitude as to constitute a serious error or substantial deficiency falling measurably outside the range of professionally acceptable performance, and (2) whether the deficiency in performance compromised the appellate process to such a degree as to undermine confidence in the correctness of the result.
 
 See Pope v. Wainwright,
 
 496 So.2d 798, 800 (Fla.1986);
 
 see also Freeman v. State,
 
 761 So.2d 1055, 1069 (Fla.2000);
 
 Thompson v. State,
 
 759 So.2d 650, 660 (Fla.2000).
 

 In raising such a claim, “[t]he defendant has the burden of alleging a specific, serious omission or overt act upon which the claim of ineffective assistance of counsel can be based.”
 
 Freeman,
 
 761 So.2d at 1069;
 
 see also Knight v. State,
 
 394 So.2d 997, 1001 (Fla.1981). Furthermore, a petitioner cannot prevail on a claim of ineffective assistance of appellate counsel “if a legal issue ‘would in all probability have been found to be without merit’ had counsel raised the issue on direct appeal.”
 
 Rutherford,
 
 774 So.2d at 643 (quoting
 
 Williamson v. Dugger,
 
 651 So.2d 84, 86 (Fla.1994)). Nor can appellate counsel be deemed ineffective for failing to prevail on an issue that was raised and rejected on direct appeal.
 
 See Spencer v. State,
 
 842 So.2d 52 (Fla.2003).
 

 Lowe contends that appellate counsel was ineffective for failing to argue on direct appeal that the prosecutor made several improper comments during the guilt and penalty phases of his trial.
 

 Lowe first argues that the prosecutor gave an emotionally charged narrative of the crime, based on a videotape made by detectives, that referred to facts not in evidence, and that counsel was ineffective for failing to object to this argument. We disagree. The narrative of the events of the crime was the prosecutor recalling the sequence of events as shown in the videotape, which had been admitted
 
 *43
 
 into evidence. However, the statement concerning how the victim possibly reacted and what Lowe possibly said during the crime was not a fact in evidence because there was no evidence that the victim said or did anything at the scene of the crime and there was no evidence that Lowe made any statements at the murder scene. In
 
 Rose v. State,
 
 787 So.2d 786, 797 (Fla.2001), the defendant made a similar claim that the prosecutor made improper comments during closing arguments on “what he believed the victim might have said.” This Court found that the comments were not so egregious that they warranted reversal, and also found the comments harmless. In finding that the comments were harmless, the Court emphasized that “While we have cautioned against arguments ‘imagining’ what may have happened to the victim, we have held that wide latitude is afforded counsel during closing arguments.”
 
 Id.
 
 (citing
 
 Moore v. State,
 
 701 So.2d 545, 550 (Fla.1997)).
 

 Similar to
 
 Rose,
 
 the comments in this case were not so inflammatory that they influenced the jury to reach a more severe verdict than it would have had the comments not been made. Furthermore, the trial judge reminded the jury prior to deliberations that the case must be decided only upon the evidence heard from the witnesses, from evidence seen in the form of the exhibits, and from the instructions given by the court. Any error was therefore harmless.
 
 See State v. DiGuilio,
 
 491 So.2d 1129 (Fla.1986). Appellate counsel was not ineffective for failing to raise this issue because our confidence in the outcome of the appeal has not been undermined.
 

 Lowe also contends appellate counsel was ineffective for failing to argue on appeal that during closing argument the prosecutor vouched for Leudtke’s credibility by stating, “He’s doing the best he can to recollect the truth....” This Court has held that it is improper to bolster a witness’s testimony by vouching for his or her credibility.
 
 See Gorby v. State,
 
 630 So.2d 544 (Fla.1993). Contrary to Lowe’s assertion, the prosecutor was not vouching for Leudtke’s credibility. Before the prosecutor made the statement at issue, he was summarizing Leudtke’s testimony about what he observed when he pulled into the parking lot of the store after the robbery and shooting. In reviewing Leudtke’s observations, the prosecutor was explaining why Leudtke did not precisely remember the clothing and other attributes of the man he saw leaving. The prosecutor was not expressing his personal opinion of Leudtke’s credibility. Again, ineffective assistance of counsel has not been demonstrated.
 

 Lowe next argues that during the penalty phase the prosecutor improperly cross-examined defense witness Catherine Brandes and that appellate counsel should have argued this issue on appeal. On direct examination, Brandes testified that she worked with Lowe at Gator Lumber, that Lowe was a good person and very friendly, that he was given more responsibilities over the time he worked there, and that he did a good job. Subsequently, during cross-examination, the prosecutor asked whether Brandes knew about Lowe’s prior robbery conviction. When Brandes stated that she was not familiar with this conviction, the prosecutor explained the details of the robbery. Defense counsel objected and argued that it was improper cross-examination because Brandes only testified that Lowe was a good person. The trial court overruled the objection.
 

 In
 
 Hildwin v. State,
 
 531 So.2d 124, 127 (Fla.1988), this Court noted that “there is a different standard for judging the admissibility and relevance of evidence
 
 *44
 
 in the penalty phase of a capital case, where the focus is substantially directed towards the defendant’s character.” This Court also noted that during the penalty phase, the State “may rebut defense evidence of the defendant’s nonviolent nature by means of direct evidence of specific acts of violence committed by the defendant.”
 
 Id.
 
 at 128. In the instant case, defense counsel’s direct examination opened the door to Lowe’s character. During cross-examination, the prosecutor was attempting to rebut Brandes’ testimony by questioning the extent of the relationship between Brandes and Lowe and her knowledge of Lowe through knowledge of his criminal history. Therefore, the prosecutor’s cross-examination was not improper, and the trial court did not abuse its discretion in overruling defense’s objection. Because this issue is meritless, appellate counsel cannot be deemed ineffective for not raising this matter on appeal.
 

 Lowe also claims appellate counsel was ineffective for failing to argue that during penalty phase closing arguments, the prosecutor improperly described Lowe’s prior robbery conviction and stated facts contrary to the record — specifically, he questions the prosecutor’s comment that a knife might have been thrown out of the van during the robbery. Defense counsel did not object to this statement, so the issue was not preserved for appeal. Moreover, even if the claim had been preserved, it lacks merit because the facts of that robbery as described by the prosecutor were admitted into evidence through the testimony of the victim of the robbery and Deputy Sheriff Michael Scully. As a result of the testimony of both of these witnesses, the prosecutor reasonably inferred from the evidence presented that the weapon that Lowe used on the victim could have been thrown out of the van during the police chase.
 
 See Bertolotti v. State,
 
 476 So.2d 130, 134 (Fla.1985) (“The proper exercise of closing argument is to review the evidence and explicate those inferences which may be reasonably drawn from the evidence.”).
 

 Because all of the assertions raised under this claim are without merit, appellate counsel cannot be deemed ineffective for failing to raise these issues on direct appeal. Accordingly, Lowe is not entitled to habeas relief on this claim.
 

 Lowe asserts that the four aggravators on which the jury was instructed — (1) heinous, atrocious, or cruel (HAC); (2) cold, calculated, and premeditated (CCP); (3) prior conviction of a violent felony; and (4) murder committed while engaged in the course of an attempted robbery — are unconstitutionally vague and overbroad. Lowe also contends that even though the trial court did not find the HAC or CCP aggravators, this does not render the error of a vague instruction harmless because the court indirectly relied on the other two aggravators by giving great weight to the jury’s sentencing recommendation. Lowe claims appellate counsel was ineffective for failing to challenge these instructions.
 

 Counsel was not ineffective, because there is no merit to this argument. All of these aggravators have been found to be constitutional.
 
 See Ault v. State,
 
 866 So.2d 674 (Fla.2003) (upholding the constitutionality of aggravator of during the course of a felony);
 
 Jones v. State,
 
 928 So.2d 1178 (Fla.2006) (finding the prior violent felony aggravator constitutional);
 
 Hall v. State,
 
 614 So.2d 473 (Fla.1993) (finding the HAC aggravator constitutional).
 

 Finally, in arguing that the CCP aggra-vator is unconstitutional, Lowe cites to
 
 Jackson v. State,
 
 648 So.2d 85 (Fla.1994), and asserts that the court erred by giving a short instruction on the CCP aggravator which failed to provide any definitions for the terms cold, calculated, and premeditat
 
 *45
 
 ed. It is true that the trial judge did not provide any definitions for the terms cold, calculated, and premeditated in the jury instructions. However, a CCP instruction which did not provide definitions for these terms was not declared unconstitutionally vague until this Court rendered the decision in
 
 Jackson
 
 in April 1994. Lowe’s trial took place in 1991. Thus, it cannot be argued that the trial judge failed to provide the proper jury instructions based upon our decision in
 
 Jackson.
 
 In addition, appellate counsel cannot be deemed ineffective for failing to present a
 
 Jackson
 
 claim because it was not preserved.
 
 [9]
 

 See Davis v. State,
 
 928 So.2d 1089, 1132-83 (Fla.2005) (holding that appellate counsel was not ineffective because defense counsel did not specifically object to the CCP instruction as worded, nor did he request or submit alternative or limiting instruction, thus failing to preserve the claim for appellate review).
 

 Thus, to the extent that Lowe alleges ineffective assistance of appellate counsel, habeas relief is denied on this claim.
 

 Lowe asserts that appellate counsel was ineffective for failing to challenge sufficiency of the evidence. Lowe makes a conclu-sory statement that had this issue been raised, Lowe would have been entitled to a new trial. Although appellate counsel did not raise this issue, this Court “independently reviews each conviction and sentence to ensure they are supported by sufficient evidence.”
 
 Hardwick v. Wainwright,
 
 496 So.2d 796, 798 (Fla.1986). In Lowe’s direct appeal, although the Court did not expressly state in its decision that it found the evidence sufficient to affirm Lowe’s convictions, it noted that Lowe’s fingerprints had been found at the scene of the crime, his car was seen leaving the parking lot of the store immediately after the shooting, his gun had been used in the shooting, and his time card showed that he was clocked out from his place of employment at the time of the murder. These facts coupled with other evidence presented at Lowe’s trial were sufficient to affirm the convictions. If appellate counsel had challenged the sufficiency of the evidence on direct appeal, the claim would have been found to be meritless.
 
 See Reed v. State,
 
 875 So.2d 415 (Fla.2004). As a result, appellate counsel cannot be deemed ineffective for failing to raise this issue on appeal. Habeas relief is denied on this claim.
 

 Constitutionality of Section 921.141
 

 Lowe next asserts that Florida’s capital sentencing law, section 921.141, Florida Statutes (2007), is unconstitutional for various reasons. We find that there is no merit to any of Lowe’s arguments. First, Lowe argues that subsection 921.141(1) is unconstitutional because it allows the use of hearsay during the penalty phase, and he argues that the use of this evidence violates his right to confront and cross-examine his accusers and violates his right to remain silent. However, there is nothing in section 921.141(1) that denies a defendant the right to confront and cross-examine the State’s witnesses, nor is there language within the subsection that requires a defendant to give up his right to remain silent.
 
 See Chandler v. State,
 
 534 So.2d 701 (Fla.1988).
 

 Lowe also argues that section 921.141 is unconstitutional because it allows the exclusion of jurors for their views on capital
 
 *46
 
 punishment. There is nothing in section 921.141 that discusses whether jurors should be excluded for their views on capital punishment. Furthermore, the issue of whether a juror should be excluded based on his or her views on capital punishment is determined on an individual basis depending on what a particular juror says in answer to voir dire questioning. Lowe finally argues that section 921.141 is unconstitutional because it allows the death penalty to be imposed under a theory of felony murder without a finding that the defendant intentionally caused the death of the victim. This Court has held that intent to cause death is not an element of felony murder, and in doing so, has also upheld the constitutionality of the statutory provision defining felony murder.
 
 See Adams v. State,
 
 341 So.2d 765, 767-68 (Fla.1976) (“[Felony murder is] an exception to the general rule that murder is homicide with the specific intent of malice aforethought. Under the felony murder rule, state of mind is immaterial. Even an accidental killing during a felony is murder.”).
 

 The issue of whether section 921.141 is unconstitutional, in whole or in part, has been addressed repeatedly by this Court. This Court has consistently found section 921.141 to be constitutional.
 
 See Schoenwetter v. State,
 
 931 So.2d 857 (Fla.2006);
 
 Foster v. State,
 
 929 So.2d 524 (Fla.2006);
 
 Stephens v. State,
 
 787 So.2d 747 (Fla.2001);
 
 Brown v. State,
 
 721 So.2d 274 (Fla.1998). Lowe is not entitled to habeas relief on this claim.
 

 Constitutionality of Lowe’s Death Sentence under Roper v. Simmons
 

 Lowe claims that his death sentence is unconstitutional because the State used prior convictions which arose from crimes committed by Lowe before he was eighteen years of age to establish an aggravating factor, and that the use of the juvenile convictions is in violation of the Eighth Amendment and
 
 Roper v. Simmons,
 
 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2005). In
 
 Roper,
 
 the United States Supreme Court held that “[t]he Eighth and Fourteenth Amendments forbid imposition of the death penalty on offenders who were under the age of 18 when their crimes were committed.”
 
 Id.
 
 at 578, 125 S.Ct. 1183. Lowe attempts to expand this prohibition to preclude the State from using as an aggravating factor a conviction for a crime committed by a defendant before he turned eighteen. However,
 
 Roper
 
 does not stand for this proposition, as this Court has held.
 
 See England v. State,
 
 940 So.2d 389 (Fla.2006);
 
 Campbell v. State,
 
 571 So.2d 415, 418 (Fla.1990) (finding that prior juvenile convictions can be considered to support the prior violent felony aggravator). Accordingly, habeas relief is denied on this claim.
 

 CONCLUSION
 

 For the reasons stated above, we affirm the trial court’s order upholding Lowe’s first-degree murder conviction and granting a new penalty phase. We deny Lowe’s petition for writ of habeas corpus.
 

 It is so ordered.
 

 QUINCE, C.J., and WELLS, ANSTEAD, PARIENTE, and LEWIS, JJ., concur.
 

 CANADY and POLSTON, JJ., did not participate.
 

 [1]
 

 .The issues raised were: (1) whether the trial court erred in denying Lowe’s motion to suppress his confession based on the claim that the officers deliberately bypassed Lowe's request for an attorney; (2) whether the trial court erred in permitting the jury to hear Detective Kerby’s statements made in the taped interrogation of Lowe based on the argument that the statements were inflammatory and prejudicial; (3) whether the trial court erred in admitting the entire contents of a box of Lowe's personal items, which included his PSI from his prior robbery conviction and letters written to Lowe in prison; (4) whether Lowe was denied his constitutional rights to effective assistance of counsel and the equal protection of the law when the trial court refused to appoint two attorneys to assist in Lowes defense; (5) whether the trial court erred in failing to conduct an inquiry under
 
 Nelson v. State,
 
 274 So.2d 256 (Fla. 4th DCA 1973), after Lowe expressed dissatisfaction with his appointed trial counsel; (6) whether the trial court erred in denying a motion for disqualification under Florida Rule of Criminal Procedure 3.230; (7) whether county court Judge Wild lacked jurisdiction to preside over the instant felony prosecution where his assignment to the circuit bench was not temporary; (8) whether the trial court erred in giving, over Lowe’s objection, the State's special jury instruction: “Inconsistent exculpatory statements can be used to affirmatively show conscious[ness] of guilt and unlawful intent”; (9) whether the trial court erred in overruling defense counsel’s objections to the prosecutor’s closing arguments, and denying defense's motion for mistrial on these grounds; (10) whether the trial court erred in granting the State's motion in limine which excluded Danny Butts' spontaneous statement to Donna Brooks that "two peoples” argued with and shot his mother; (11) whether the trial court erred in denying the defense's requested instruction that the presence of the victim’s child could not be considered in the penalty recommendation; (12) whether it was error to instruct the jury on the heinous, atrocious, or cruel (HAC) and cold, calculated, and premeditated (CCP) aggravating circumstances when the evidence did not support them; (13) whether the State's penalty phase argument was improper and relied so heavily on nonstatutory aggravating circumstances and character attacks on Lowe that a new penalty phase must be held; (14) whether the court gave excessive weight to the prior violent felony aggravator; (15) whether the trial judge erred in allowing evidence of the circumstances surrounding Lowe's prior felony to be admitted in the penalty phase; (16) whether the trial judge erred in failing to inquire into the whereabouts of two defense witnesses who failed to show up during the penalty phase; and (17) whether the trial court failed to consider or weigh mitigation.
 

 [2]
 

 .
 
 Huff v. State,
 
 622 So.2d 982 (Fla.1993).
 

 [3]
 

 .
 
 Brady v. Maryland,
 
 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).
 

 [4]
 

 . Lowe argued on direct appeal that the trial court erred in allowing the State to introduce into evidence the entire contents of a box, which included the PSI. In finding the claim meritless, we noted that defense counsel objected to the introduction of the contents of the box into evidence based on relevancy. We agreed with the trial court that the box was relevant to prove that the items in the box belonged to Lowe because the sunglasses were in the box, and the sunglasses were relevant to the evidence in the case.
 
 Lowe,
 
 650 So.2d at 974. Therefore, because defense counsel did object based on relevancy, Lowe cannot now argue that counsel was ineffective for failing to object to the introduction into evidence of the PSI based on relevancy.
 
 See Stephens v. State,
 
 975 So.2d 405 (Fla.2007) (holding that counsel cannot be deemed ineffective for failing to object when, in fact, he did object).
 

 [5]
 

 . Because Lowe repeats the argument about the videotaped police “reenactment” of the crime from a previous claim, we will not readdress this claim.
 

 [6]
 

 . On direct appeal, Lowe argued that the trial court erred in admitting his confession at trial because the police used White as an agent to coerce a confession from him.
 
 Lowe,
 
 650 So.2d at 972. This Court did a thorough analysis and found that the police did not employ White as an agent to coerce a confession from Lowe, and also noted that White testified that she already had her own suspicions which caused her to request to speak with Lowe.
 
 Id.
 
 Lowe is raising the same claim through his postconviction appeal, but adding another argument to the claim. Thus, Lowe is improperly using this postconviction proceeding as a second appeal.
 
 Harvey v. Dugger, 656
 
 So.2d 1253 (Fla.1995) (finding the claim that counsel was ineffective for failing to make several arguments in support of suppressing the confession was procedurally barred). Even if the claim is not procedurally barred, it lacks merit. At the hearing on the motion to suppress Lowe’s confession, White testified that she requested to speak with Lowe because she had her own suspicions about Lowe’s involvement in the crime. Her deposition testimony is consistent with this testimony. In her deposition, White testified that she agreed to go in the room to speak with Lowe, that no one threatened her, that she was not promised anything, and that she tried to get Lowe to confess because she wanted to know what happened for herself. Thus, there is not a reasonable probability that the trial court would have granted the motion had counsel impeached White with her deposition testimony. Accordingly, Lowe fails to demonstrate prejudice under
 
 Strickland.
 

 [7]
 

 . The two mitigating circumstances are: (1) disproportionate punishment because the other individuals who participated in the crime have not been punished or even arrested, and (2) Lowe was an accomplice in the capital felony committed by another person and his participation was relatively minor.
 

 [8]
 

 . The evidence presented in the first successive postconviction motion from Lisa Grone, Maureen McQuade, and David Stinson also supports the granting of a new penalty phase.
 

 [9]
 

 . This issue was not preserved for appellate review because defense counsel failed to object to this instruction at trial. Although Lowe argues that before trial, defense counsel requested the court to define the CCP aggra-vator in its jury instructions pursuant to
 
 Jackson,
 
 counsel failed to object to the CCP instruction or propose alternative instructions during the charge conference or when the jury instructions were being given.